### DIANNE S. LOMBARDO *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF MANCHESTER ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NOS. 515775
HARTFORD-NEW BRITAIN AT HARTFORD     520304
521163

Memorandum filed February 23, 1994

*Golas & Horvath,* for the plaintiff.

*Manchester town attorney,* for the named defendant.

*Jacobs, Walker, Rice & Basche,* for the defendant Paul S. Wright.

HODGSON, J. The plaintiff appeals from the decision of the defendant planning and zoning commission of the town of Manchester (commission) granting the applications of the defendant Paul S. Wright to create a rear lot on his property and to divide the front lot into two lots. The plaintiff also appeals from the recon-

sideration and repetition of the two approvals by the commission after its first approvals had been made the subject of an appeal. In Docket No. 515775, the plaintiff challenges the validity of the initial decisions. In Docket No. 520304, the plaintiff challenges the validity of the repeated approval of the application to create a rear lot. In Docket No. 521163, the plaintiff challenges the validity of the repeated approval of the division of the front lot. The three appeals have been consolidated.

After counsel had been notified of the date of the hearing for these administrative appeals, the plaintiff filed a motion titled: "Motion to Introduce Evidence and to Add to the Record of the Cases on Appeal." The motion did not identify the testimony the plaintiff sought to introduce or the topic of such testimony. At oral argument, the plaintiff indicated that testimony would be presented to establish that the chairman of the commission and the town planner were aware of amendments to the subdivision and zoning regulations that had been adopted in 1988. The defendants stipulated to their awareness, and the plaintiff did not thereafter seek to present testimony on that or on any other subject.

The parties also stipulated that the record be supplemented by the addition of certain documents[1] appended to the plaintiff's motion.

The court finds that the plaintiff, who was at all relevant times an owner of the property abutting the tract

[1] The documents included: (1) the text of article III, § 6, of the Manchester zoning regulations in effect before April 4, 1988; (2) the text of article III, § 6, of the Manchester zoning regulations in effect from April 4, 1988, to date; (3) minutes of the April 4, 1988 meeting of the planning and zoning commission; (4) an application activity record as to an application received on February 22, 1988; and (5) a legal notice for the April 4, 1988 meeting of the planning and zoning commission.

that was the subject of the commission's rulings, is aggrieved by the commission's rulings and has standing to appeal.

The record reveals the following facts. On April 22, 1992, Wright applied to the commission for a special exception to permit the creation of a rear lot for residential development from a property known as 175 New Bolton Road. Simultaneously, Wright filed an application to subdivide land proposing to divide the resulting 1.918 acre front lot into two lots.

On June 15, 1992, the commission held a public hearing on the applications, and granted them on August 3, 1992. The plaintiff filed an appeal on August 31, 1992, on the grounds, inter alia, that the commission had allowed modifications of the applications after the public hearing without providing abutters an opportunity to be heard on the modified proposals and that the approvals violated state statutes and the provisions of the town's zoning regulations.

On September 28, 1992, less than a month after the plaintiff filed the aforementioned appeal, Wright again filed applications with the commission, asking for the same special approvals that the commission had already granted on August 3, 1992. In one of these applications Wright again sought a special exception under article III, § 6, of the zoning regulations of the town of Manchester, to create a rear lot from the premises known as 175 New Bolton Road. In the other application, Wright again sought to subdivide into two lots the front half of the parcel remaining upon creation of a rear lot.

On December 7, 1992, after a public hearing, the commission approved the application to create a rear lot. The plaintiff objected to the rehearing of the application on the ground that it was the same application previously approved and as to which an appeal was

pending. The commission neither opened the proceeding that had led to its approval of the initial application on August 3, 1992, nor vacated that prior approval of the initial application to create a rear lot.

The plaintiff appeals from the commission's December 7, 1992 approval of the application to create a rear lot on the grounds that the commission was without authority to act on an application that had already been granted, and that the approval was contrary to state statutes and to the local zoning regulations in a number of ways.

On the same date that Wright filed the repeated application for a special exception to create a rear lot, he filed a repeated application to divide the resulting front lot on the parcel into two lots. The commission did not hear that application at the same time as the application to create a rear lot, although it was also on the commission's agenda for December 7, 1992. Instead, the commission heard and granted on January 4, 1993, the application to subdivide the front lot into two lots. The plaintiff objected that the commission was without authority to act on applications it had already granted. The commission at no time opened or vacated its approval of the prior application for the same subdivision. The plaintiff contends that the commission was without authority to act on the subdivision application and that in again granting it the commission violated state statutes and local zoning regulations.

The land to which Wright's two sets of applications apply is a tract of approximately 7.23 acres located partially in a RR zone and partially in an AA zone. The rear lot approved by the commission on two occasions is approximately 5.3 acres. The resulting front lot, to which both applications for subdivision apply, is a tract of approximately 1.9 acres. The commission twice

approved the subdivision of this latter tract into two lots, both with frontage on New Bolton Road, each approximately one acre in size. The plan approved as to the rear lot includes the deeding of a strip of land from the rear lot to New Bolton Road. The actual access route to the rear lot approved by the commission, however, does not run over the deeded access strip but over an easement across the front lot.

Substantively, the plaintiff's complaint is that the commission, by its actions, approved the subdivision of Wright's land into three lots, including a rear lot, when such rear lots are prohibited in subdivisions. Section 4.06 (f) of the subdivision regulations of the town of Manchester provides that "[a]ll lots [in a subdivision] shall have access directly from a public street." The rear lot at issue clearly does not have direct access from a public street. Rather, it has access over another lot by operation of an access easement. The commission and Wright argue, in effect, that since the rear lot was created in a separate action from the subdivision approval, § 4.06 (f) of the regulations was inapplicable.

The plaintiff further raises two principal procedural issues: (1) that the commission failed, in its first consideration of the applications, to provide a public hearing as to the actual proposal approved, since it allowed amendments after the public hearing; and (2) that the commission's second consideration of the applications was invalid because the commission lacked authority to rehear applications while its prior rulings were undisturbed.

Insofar as the outcome of the consideration of the procedural issues would not remove the necessity of deciding the substantive issue, it is prudent to address now the issue of whether a landowner who seeks simultaneously to create a rear lot and to divide the result-

ing front lot into two lots can do so by a process other than compliance with the subdivision regulations of the town of Manchester.

General Statutes § 8-25 provides that "[n]o subdivision of land shall be made until a plan for such subdivision has been approved by the [planning and zoning] commission." General Statutes § 8-18 defines "subdivision" as "the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission . . . ."

Under General Statutes § 8-26, the commission has authority to determine whether the division of any land constitutes a subdivision or resubdivision. Section 3.00 of the subdivision regulations of the town of Manchester in effect at all relevant times defined "subdivision" as "a division of a tract or parcel of land into three or more lots, made subsequent to the adoption of the Subdivision Regulations by the Commission, for the purpose, whether immediate or future, of sale or building development, expressly excluding development for municipal, conservation or agricultural purposes and includes resubdivision."

The subdivision regulations further provide, at § 4.00, that "[a]ll subdivision of land in the town of Manchester shall be made in accordance with the procedure described in these regulations." Further, § 4.01 of the same regulations provides, in relevant part, that "[n]o subdivision of land shall be made until a plan for such subdivision has been approved by the Commission."

In exercising its function in approving or disapproving a subdivision plan, a planning commission acts in an administrative capacity. *Westport* v. *Norwalk,* 167 Conn. 151, 155, 355 A.2d 25 (1974); *RK Development Corp.* v. *Norwalk,* 156 Conn. 369, 375, 242 A.2d 781 (1968); *Forest Construction Co.* v. *Planning & Zoning*

*Commission,* 155 Conn. 669, 674, 236 A.2d 917 (1967). In passing on a subdivision application, a commission is controlled by the regulations that it has previously adopted. *Westport* v. *Norwalk,* supra, 155, 157; *North Rollingwood Property Owners Assn.* v. *City Plan Commission,* 152 Conn. 518, 521, 209 A.2d 177 (1965); *Langbein* v. *Planning Board,* 145 Conn. 674, 679, 146 A.2d 412 (1958); *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 83, 103 A.2d 814 (1954). If a subdivision application does not conform with the subdivision regulations, the planning commission should disapprove it. *Westport* v. *Norwalk,* supra, 157–58; *South East Property Owners & Residents Assn.* v. *City Plan Commission,* 156 Conn. 587, 591–92, 244 A.2d 394 (1968); *Krawski* v. *Planning & Zoning Commission,* 21 Conn. App. 667, 671, 575 A.2d 1036, cert. denied, 215 Conn. 814, 576 A.2d 543 (1990); *Gagnon* v. *Municipal Planning Commission,* 10 Conn. App. 54, 57, 521 A.2d 589, cert. denied, 203 Conn. 806, 525 A.2d 521 (1987).

In reviewing the commission's failure to require Wright to comply with all requirements of the subdivision regulations, this court must determine whether the commission's implicit decision that the applications did not constitute a subdivision within the meaning of its regulations is reasonably supported by the record. *Westport* v. *Norwalk,* supra, 167 Conn. 161; *Gagnon* v. *Municipal Planning Commission,* supra, 10 Conn. App. 57. The court finds that it is not.

What Wright was seeking in both of his applications to the commission was the division of a seven acre tract into three lots. Since § 3.00 of its own subdivision regulations defines a division of a tract of land into three or more lots as a "subdivision," the commission was required to review Wright's applications by the standards applicable to subdivisions. In considering the applications, the commission was advised by a staff member, Mark Pellegrino, director

of planning, "that even after the enactment of subdivision regulations, an owner of a parcel of land is entitled to one 'free cut' from that parcel; so if the parcel of land was intact today as it was in 1947, anyone has a right to create one piece [out of these] without requiring a subdivision approval from the planning commission."

The text of the subdivision regulations provides no support for Pellegrino's statement. On the contrary, under the heading "Applicability," the regulations provide that "[t]he above standards shall apply to all subdivisions approved after the effective date of the revisions and to subdivisions submitted but not approved by the Planning and Zoning Commission as of the effective date." There is no provision anywhere in the subdivision regulations for any exception based on a "free cut" filed simultaneously with an application to subdivide.

The exception espoused by its staff member and apparently applied by the commission appears to rest on a prior, but superseded, linkage between the subdivision regulations and the provision in the general zoning regulations for the creation of rear lots.

Prior to April 4, 1988, article III, § 6, of the zoning regulations of the town of Manchester provided, at § 6.03, as follows: "In the case of subdivisions approved after December 1, 1986, the Commission may approve rear lots as described in paragraphs 6.02.02 through 6.02.06 above . . . ." Section 6.03.01 of the same regulations provided that "[n]o more than 30% of the total number of lots in any subdivision may be rear lots." On April 4, 1988, the commission amended article III, § 6, of the zoning regulations to eliminate these references to rear lots in subdivisions. After that amendment, no provision of either the zoning regulations or the subdivision regulations permitted the cre-

ation of a rear lot at the same time as a further division of a property without complying with the subdivision regulations, and the subdivision regulations themselves require, under § 4.06, that each lot have access directly from a public street.

Supplements to the administrative record that were received without objection pursuant to a motion to supplement the record indicate the purpose of the change in the zoning regulations on April 4, 1988. The legal notice announcing the actions taken at the commission's meeting held on that date identified as the first item of business the following: "Town of Manchester Zoning Regulation Amendment—Article III, Section 6—Rear Lots (Z-77)—Approved the amendment to Article III, Section 6 of the Zoning Regulations thereby prohibiting the creation of rear lots in new subdivisions."

The minutes of the commission's meeting of April 4, 1988, reveal that the town's senior planner presented the proposed revision to the regulations to the commission and explained that, in 1986, the commission had adopted the rule that would allow up to thirty percent of the lots in a new subdivision to be rear lots. This enactment had resulted in the submission of subdivision plans that did not seem to meet the intent of the regulations or that contained requests of reduced frontage to allow maximum yield of lots. The planner is quoted in the minutes as having reminded the commission that "[i]n December of 1987, the Commission instructed the staff to revise the regulation so that rear lots in subdivisions would be eliminated." He further explained that "the revision to the [zoning] regulations . . . would delete Section 6.03 to eliminate rear lots in new subdivisions."

The commission and Wright state the position that these revisions did not bar the creation of a rear lot where the resulting front lot was to be divided, but that

they applied only to larger subdivisions with multiple lots. The revisions do not identify any such limitation, nor did the commission amend the definition of "subdivision" to create such an exception.

The record is clear that in his simultaneous applications and site plan Wright sought to divide his property into three lots and that the commission failed to require him to comply with the subdivision regulations which, on their face, applied to the creation of three lots from one parcel of land. The plaintiff's presentation of two applications, bifurcating the division into two simultaneous steps, did not render inapplicable the regulations that required the commission to apply its subdivision standards to the division of a property into three lots.

As Wright correctly observes, the zoning regulations would permit him to create a rear lot, dividing his property into two lots, and the subdivision regulations would not have applied to such a division, since, by their terms, the subdivision regulations apply only to divisions into three lots. Since Wright was, however, seeking approval to divide his parcel into three lots, not two, it was necessary for him to comply with the subdivision regulations, which, as amended, prohibit rear lots where a property is divided into three or more lots.

The commission failed to require Wright to comply with its current subdivision regulations in a situation to which they were applicable, and, its granting of Wright's applications on August 3, 1992, and again upon their resubmission, were unauthorized departures from its own regulations. *Westport* v. *Norwalk*, supra, 167 Conn. 157. The commission's failure to deny applications for subdivision that did not comply with the applicable regulations rendered the approvals illegal on both occasions; id., 158; as the commission had no statutory authority to approve a division of land that did not comply with its regulations.

While there is copious case law concerning an administrative agency's ability to reverse its prior rulings, this court has been unable to locate any appellate case law concerning the jurisdiction of a zoning commission to hear and to grant applications that it has already granted. Where a commission reviewed and removed a prior condition that it had imposed on a subdivision plan, however, the Appellate Court found that such reconsideration was permissible because the commission correctly determined that the condition was unnecessary. *Carlson* v. *Fisher,* 18 Conn. App. 488, 499 n.7, 558 A.2d 1029 (1989). In *Carlson,* the Appellate Court cited with approval dicta from *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 711–12, 68 A.2d 123 (1949), in which Chief Justice Maltbie noted that the principle that a zoning authority should not be permitted to review its own decisions was "not a hard and fast rule, but a board's reversal of its action should be permitted only when there is justification and good cause." (Internal quotation marks omitted.) Id.

In her appeal from the commission's approval of Wright's initial applications, the plaintiff claimed that the commission improperly permitted Wright to amend his applications repeatedly, and that no public hearing had been held as to the applications that were actually approved by the commission. By reapplying, Wright apparently sought to remove this claimed procedural defect in the means by which he achieved authorization for division of his land.

The commission's regulations do not preclude the refiling of previously approved applications to cure procedural defects, and the plaintiff has identified no statute or regulation precluding consideration of an application while an appeal is pending as to the same land.

In another administrative context, the Connecticut Supreme Court has approved the repeated exercise of

administrative jurisdiction to cure a procedural defect. In *LaCroix* v. *Board of Education,* 199 Conn. 70, 505 A.2d 1233 (1986), a city board of education had terminated the employment of a tenured teacher without affording the teacher the opportunity for a hearing that is required by the Teacher Tenure Act. The court ruled that the board, after being made aware of the claim that the termination was illegal, was not precluded from reinitiating the termination procedure and offering the teacher the hearing that had been omitted initially. Id., 82–83.

As a standard treatise on administrative law observes, "[e]very tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify its judgment, decree or order." 2 K. Davis, Administrative Law (1958) § 18.09, p. 606.

Since the plaintiff makes no claim regarding the repeated applications that the commission failed to hold a hearing on the actual applications approved, her complaint concerning such a defect in the prior proceeding is moot.

This court concludes that, under the circumstances, the commission had jurisdiction and authority to hear the repeated applications. This conclusion, however, does not affect the determination that the commission acted in excess of its authority by failing to hold the applications, on either occasion, to the substantive standards applicable to subdivision applications.

Both as to Wright's initial applications and as to its second consideration of the renewed applications to achieve the same division of Wright's land into three lots, the commission illegally failed to apply its own applicable subdivision regulations and approved a three lot subdivision that did not comply with the current regulations.

The appeals in all three cases are sustained.