[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, A.J. Czyr, Inc. (Czyr), appeals, pursuant to General Statutes § 8-8(b), from a decision of the defendant, the Planning and Zoning Commission of the Town of Ridgefield (Commission), that denied, without prejudice, the subdivision application of Czyr.
Czyr commenced this appeal by service of process on November 17, 1994, against the Commission. Czyr alleges that the Commission's action in denying its subdivision application was arbitrary, illegal and an abuse of discretion. Czyr further argues that the denial by the Commission amounts to an unconstitutional taking of its property without just compensation. The main issue in this appeal is the propriety of the Commission's denial of Czyr's application based on the Commission's preference that lot 7 of the proposed subdivision, which contains ridgetops and rock outcroppings, rather than a wetlands area suggested by Czyr, be designated as open space to fulfill the mandate of Ridgefield Code § 4-25 (a), which requires a maximum of 10 percent of a subdivision to be deemed open space.
Czyr is a contract purchaser of a 27.750 acre parcel of land on Limekiln Road in Ridgefield. On May 4, 1995, Czyr filed a subdivision application with the Commission requesting approval of a ten lot subdivision wherein 3.813 acres would be set aside CT Page 12726 as open space. In connection with the application, Czyr filed the appropriate maps and supporting documentation setting forth the layout of the proposed project.
On July 10, 1994, the Commission members, in aid of ruling on Czyr's application, walked the terrain of the proposed subdivision. Thereafter, on July 19, 1994, a public hearing was held on Czyr's application. On July 14, 1994, notice of the July 19 hearing was published in The Ridgefield Press.
During the hearing, the Commission reviewed correspondence submitted from different groups and individuals, including the Conservation Commission, that recited "the [Conservation] Commission feels that the applicant has simply attempted to get too many houses on the site. In an effort to get the maximum possible number of houses, the applicant has had to locate them on very difficult sites which will require a disproportionate amount of regrading and tree removal. The Commission also feels that the open space should be located in the area of lot 7. This area could then be added to Aldrich Park and the picturesque high ground could be kept in its natural state. Also, eliminating lot 7 would eliminate the need for a good part of the accessway which is near the existing homeowners." The letter from the conservation commission further states that "lot 7 which contains the highest ground in the entire area borders on Aldrich Park, a major recreation area in the Town. The two knolls on lot 7 offer a commanding view of the Park area. The applicant is proposing a 600 foot driveway running along the park boundary to get to the proposed house on lot 7. This house is to be placed just off the high point on the lot."
Ms. Meffley, a member of the public, testified in opposition to Czyr's application, opining that the most ecologically sound proposition would be to require Czyr to maintain lot 7 as open space since the Comprehensive Plan of the Town of Ridgefield specifically mandates that ridge lines be preserved, and that the addition of lot 7 to the adjacent conservation area known as Aldrich park would be most in line with the subdivision regulations and development plans of Ridgefield. Further, Meffley added that it would be more appropriate to require Czyr to designate areas that would be "useful open space other than just wet ground."
Testimony in support of Czyr's application was offered by Ty Harrington, grandson of the present owner of the property, Mrs. CT Page 12727 Spolane, who testified that it would be more appropriate to mandate wetlands as the open space area since the lot 7 ridge line is quite treacherous in several locations. Furthermore, he added that he was very familiar with the terrain of the proposed subdivision and, on that basis, commended Czyr for economically and ecologically "optimizing" the use of the land.
During the hearing, the Town of Ridgefield (Town) suggested that it might be willing to purchase lot 7 from Czyr. Czyr's response was "we are not interested in selling lot 7." Mr. Czyr further testified at the hearing that if an alternative area, such as lot 7, was designated as open space, the area that is presently designated as open space would probably not be built upon since it is wetlands.
After the testimony was completed, the Commission decided to adjourn the hearing and reconvene on September 13, 1994. In the interim, the Commission felt it was necessary to re-walk the property to observe the layout of the various roads and evaluate the significance of the ridge line that was comprised in lot 7. On September 11, 1994, the Commission re-walked the property.
On September 13, 1994, the hearing resumed. Helen Shepherd, the Conservation Commission ranger for Aldrich park, testified that "it would be a shame to build a house in this area. I am proposing that this land be given to the Conservation Commission to add to Aldrich Park. And I guess I am appealing to your generosity to donate something to the town that is unique and very special, and really add something to let everybody in town enjoy this view rather than the one or two families that would be living there." These sentiments were echoed by the testimony of Lillian Willis, vice chairperson of the Conservation Commission. Throughout the hearing, the Commission members suggested to Mr. A.J. Czyr various ways of developing lot 7 while still reserving conservation rights to the ridge line, either through a conservation easement or a set aside for the residents of the proposed subdivision. Mr. Czyr stated that he would consider granting a conservation easement over certain of the open spaces. With respect to lot 7, however, Mr. Czyr felt that private ownership was tantamount to a conservation easement.
Richard Daly, a local resident, testified that lot 7 "is really one of the last beautiful scenic views in Ridgefield. I have only been here five years, I know I'm a newcomer, but I love that space. There's animals in there, red foxes, I have seen them CT Page 12728 in the park. The smaller, narrower that open space gets, the more endangered it is for the birds and for other species. And I think you could still have a subdivision that could work, but I just think that that space is too valuable, it is not worth one sale to one homeowner."
Further testimony revealed that for years naturalists using Aldrich park had trespassed unknowingly on the land of the proposed subdivision to access the ridge line views. Many local residents voiced opposition to the approval of the subdivision application as a result of Czyr's exclusion from the proposal of lot 7 as open space. In support of the application, the grandchildren of the present owner, Mrs. Spolane, testified that they approved of Czyr's proposed use of the property. Thereafter, the application was tabled "in the hope of further productive discussion between the developer and the Conservation Commission."
On September 27, 1994, the application was again considered, and again tabled, since the Commission required Czyr to submit a revised map and a request for a waiver as to the grade of the accessway to proposed lot 7.
The application was next considered on October 4, 1994, when a majority of the Commission members voted to request that a denial of the application be drafted by the town planner. The Commission's preliminary denial was without prejudice and was subject to requesting Czyr "to readjust the layout to meet the Comprehensive Town Plan guidelines which recommend the protection of scenic ridgetops and the good development of the property itself." "Mr. Coyle supported Dr. Autuori[, both members of the Commission,] and commented that the only meaningful open space here is the ridgeline and if ridges are not protected, then eventually the Town's name may need to be changed." "Mr. Savino[, another Commission member,] saw the land as hilly terrain which could not be easily reconfigured and he was concerned about the `taking' issue."
"Dr. Gelfman was against the motion because he felt it is the responsibility of the Town to purchase open space. The applicant showed concern for the scenic development by positioning the house [proposed for lot 7] in the hollow and not disturbing the ridgetop; he also gave open space to protect the neighboring homes and further agreed to an open space easement of the wetlands." CT Page 12729
"Mr. Gifford was against the motion. He stated that the applicant was not a novice; the land is difficult terrain; efforts were made by the applicant to please the neighbors; the Conservation members trespass on the property; the neighbors did not recognize it as private property; substantial money was spent to abide by suggestions, and now, at the last moment, the motion to deny is made because of historic precedence." "A vote was called for. The motion to request the Planner to draft a resolution to deny without prejudice carried (5-4). Voting for the motion were Commissioners Autuori, Coyle, Masters, McChesney and Huntoon. Voting against the motion were Commissioners Katz, Savino, Gifford and Gelfman."
On October 18, 1994, the matter was again brought before the Commission. "Mr. McChesney requested that the minutes reflect his decision to change his vote taken during the October 4 meeting. He is voting not to deny the application, and by so doing, changes the overall vote to deny from passing (5-4) to failing (5-4)." "Mr. McChesney requested that the Commission table the item for discussion until the full Commission is present." A vote to table was passed.
On October 25, 1994, a final vote was taken wherein Mr. McChesney changed his vote back to a denial and Czyr's application was denied 5-4. In connection with the denial, the Commission drafted a resolution of denial which set forth the Commission's reasons for rejecting the application, as follows:
 1. The subdivision failed to show suitable areas to be retained for open space. While the applicant proposes to set aside approximately 7.9 acres as open space in the form of easements and outright conveyance, the areas so designated do not meet the intent and/or criteria found under Article XII (§ 12-2), and sections 4-24, 4-25 and 4-31 of the Subdivision Regulations, as follows:
 a. Failure to comply with the criteria found in § 12-2, entitled `Addendum re open spaces:, concerning the retention of `ledges' and `ridge tops' . . . `to preserve the appearance of the natural and unbroken skyline of such ledge or ridge top. ' Said ledges and ridge tops are throughout the subdivision track but more CT Page 12730 particularly within Parcel 7;
 b. Failure to comply with the criteria for open spaces preservation found in § 4-25
of the Subdivision Regulations which states, in part, that `the Commission may require that the open space area be located at a suitable place on the edge of the subdivision so that additional land may be added. . . .' The placement of an easement along the easterly side of parcel 7 will enhance existing open space, by retaining land features of natural beauty including ledges and ridge tops;
 c. In the Commission's judgment ridge tops and ledges within parcel 7, constitute irreplaceable assets that should be preserved, in so far as possible, through the harmonious design of the subdivision. The proposed subdivision does not meet this guideline and, in the Commission's judgment, failed to meet § 4-31 of the Subdivision Regulations.
 2. In reaching its decision the Commission was guided by the `Open Space and Recreation' element of the Comprehensive Town Plan adopted effective April 25, 1980 and the more specific guidelines found in pages 55-58 relative to the preservation of open spaces, their functions, and priorities for preservation and open space recreation recommendations in said Plan.
 3. In denying this subdivision `without prejudice' the Commission expects that a more suitable lot layout, may achieve the intent, guidelines and criteria found in the Comprehensive Town Plan and the Subdivision Regulations.
(Emphasis in original.)
On November 3, 1994, the notice of denial of Czyr's application was published in The Ridgefield Press. On November 17, 1994, Czyr commenced its appeal. CT Page 12731
On March 3, 1995, Czyr filed its brief arguing that the Commission's resolution violated Ridgefield Code § 4-25, since it, in effect, required Czyr to designate open space areas other than those that Czyr had selected. Czyr's second argument is that the Commission's decision to require Czyr to make lot 7 open space is an unconstitutional taking under the fifth andfourteenth amendments of the United States constitution and article 1, § 11 of the Connecticut constitution. On June 26, 1995, Czyr filed a reply brief in further support of its positions.
On April 7, 1995, the Commission filed its brief arguing that the subdivision regulations contained in the Ridgefield Code, the "Master Plan" of Ridgefield and General Statutes § 8-25 allow the Commission to select the portion of land to be set aside as open space in a subdivision. Additionally, the Commission argues that Czyr's constitutional rights have not been interfered with since Czyr has not established that the Commission's decision is final and further that there has been no confiscation of its land since it can still develop the balance of the subdivision. On July 7, 1995, Czyr filed a supplemental brief.
The court found at the hearing on this matter that Czyr, as the contract purchaser of the property both at the time of the application and at the time of the present appeal, was aggrieved by the Commission's denial of its application. See Shapero v.Zoning Board, 192 Conn. 367, 376, 472 A.2d 345 (1984) (the contract purchaser of property subject to an application filed with an agency is aggrieved).
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202
(1988). Where an appeal is filed after the statutory appeal period has expired, the trial court lacks subject matter jurisdiction over the appeal and must dismiss the case. UpjohnCo. v. Zoning Board of Appeals, 224 Conn. 96, 102, 616 A.2d 793
(1992). Further, compliance with statutory notice provisions is a prerequisite to a valid administrative action and the failure to give notice as required by statute is a jurisdictional defect rendering the Board's decision void. Wright v. Zoning Board ofAppeals, 174 Conn. 488, 491, 391 A.2d 146 (1978).
Czyr's appeal from the Commission to this court is controlled CT Page 12732 by General Statutes § 8-8. Section 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."
Czyr commenced this appeal by service of process on November 17, 1994, fourteen days after the Commissions's decision was published in The Ridgefield Press on November 3, 1994. Therefore, Czyr's filing of the appeal was timely under General Statutes § 8-8(b).
The burden of proof to demonstrate that the Commission acted improperly is upon Czyr. Gorman Construction Co. v. Planning Zoning Commission, 35 Conn. App. 191, 195, 644 A.2d 964 (1994). "In exercising its function in approving or disapproving a subdivision plan, a planning commission acts in an administrative capacity. Westport v. Norwalk, 167 Conn. 151, 155, 355 A.2d 25
(1974); RK Development Corp. v. Norwalk, 156 Conn. 369, 375,242 A.2d 781 (1968); Forest Construction Co. v. Planning ZoningCommission, 155 Conn. 669, 674, 236 A.2d 917 (1967). In passing on a subdivision application, a commission is controlled by the regulations that it has previously adopted. Westport v. Norwalk,
supra, 155, 157, North Rollingwood Property Owners Assn. v. CityPlan Commission, 152 Conn. 518, 521, 209 A.2d 177 (1965);Langbein v. Planning Board, 145 Conn. 674, 679, 146 A.2d 412
(1958); Beach v. Planning Zoning Commission, 141 Conn. 79, 83,103 A.2d 814 (1954)." Lombardo v. Planning Zoning Commission,43 Conn. Sup. 508, 513-14, 663 A.2d 1128 (1994), aff'd and opinion adopted, 38 Conn. App. 812, 815, 663 A.2d 431 (1995). If the application complies with the applicable regulations the Commission must approve the plan. Weatherly v. Town Planning Zoning Commission, 23 Conn. App. 115, 119, 579 A.2d 94 (1990).
In reviewing the Commission's actions, the court must determine whether the record reasonably supports the conclusions it reached. Property Group Inc. v. Planning Zoning Commission,226 Conn. 684, 697, 628 A.2d 1277 (1993). Where the Commission has stated the reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970); Central BankCT Page 12733for Savings v. Planning and Zoning Commission, 13 Conn. App. 448,457, 537 A.2d 510 (1988). In applying the law to the facts of a particular case, the Commission is endowed with liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary, or illegal. GormanConstruction Co. v. Planning Zoning Commission supra,35 Conn. App. 195. Further, the court "[may not] . . . substitute its judgment for that of the zoning commission and must not disturb decisions of local commissions as long as a honest judgment has been reasonably and fairly exercised. Whittaker v. Zoning Boardof Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980); Molic v.Zoning Board of Appeals, 18 Conn. App. 159, 164, 556 A.2d 1049
(1989)." Id., 195-96.
The Commission's regulations, as local ordinances, are "subject to the interpretation of the commission itself"; Shailer v.Planning Zoning Commission, 26 Conn. App. 17, 22, 596 A.2d 1336
(1991); and this court "must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." Id.
Czyr's appeal is grounded on two bases. The first is that the Commission acted arbitrarily and illegally in denying Czyr's application since it had no right to select which portion of the subdivision Czyr should assign as open space. The second ground asserted is that the Commission's actions amount to an unconstitutional taking of Czyr's property without just compensation. These two arguments will be addressed seriatim.
The Commission, in its resolution of denial, relied on several portions of the subdivision regulations, including Ridgefield Code Article XII, § [12-]2, and §§ 4-24, 4-25
and 4-31, in determining that the areas designated by Czyr did not "meet the intent and/or criteria [for subdivision open space] found under of the Subdivision Regulations." The Commission also relied on pages 55-58 of the Comprehensive Town Plan to further bolster its position.
In attacking the Commission's determination, Czyr postulates that the Commission has no authority under the enabling statute, General Statutes § 8-25, and the subdivision regulations to assign a certain portion of a subdivision as open space.
General Statutes § 8-25 (a) provides, in pertinent part, that "[b]efore exercising the powers granted in this section, the CT Page 12734 commission shall adopt regulations covering the subdivision of land." After promulgation, "[s]uch regulations shall . . . provide that the commission may require the provision of open spaces, parks and playgrounds when, and in places, deemed properby the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan." (Emphasis added.) General Statutes § 8-25 (a). Section 8-25 (a) supplies "a broad grant of discretion to the planning commission." The Bridgeport Hydraulic Company v. Planning Zoning Commission, Superior Court, Judicial District of Ansonia/Milford at Milford, Docket No. 03 88 29 (December 6, 1993, Flynn, J.). In further support of the broad discretion position, one commentator has noted that "[t]he statute gives a commission the right to designate the areas it thinks ought to be preserved regardless of the applicant's plans." Terry J. Tondro, Connecticut Land Use Regulation, p. 346 (2d ed. 1992).
The same broad grant of discretion is contained in the subdivision regulations of the town of Ridgefield which have been promulgated pursuant to General Statutes § 8-25 (a). The Commission relied on Ridgefield Code §§ 4-24, 4-25, 4-31 and Article XII [§ 12-12, as well as the Comprehensive Town Plan, in deciding that Czyr did not set aside an appropriate open space.
Ridgefield Code § 4-24 (a) provides that "[t]he plan should show and the Commission may require that a portion thereof be reserved as open space for a park, playground or otherconservation purposes. Each reservation shall be of suitablesize, topography and general character for its purpose. . . . Such spaces shall not be required to exceed ten per cent of the total area of the subdivision." (Emphasis added.) "In construing regulations, the general rules of statutory construction apply."Smith v. Zoning Board of Appeals, 227 Conn. 71, 89, 629 A.2d 1089
(1993). "A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance." (Internal quotation marks omitted.) Lauer v. ZoningCommission, 220 Conn. 455, 468, 600 A.2d 310 (1991). In construing the regulation, a rational and reasonable result is presumed. Id., 469.
The most rational and reasonable reading of § 4-24 (a) allows the Commission to exercise discretion, consistent with General Statutes § 8-25 (a), to determine suitable size, CT Page 12735 topography and general character of the open space. The construction that Czyr would apply to § 4-24 (a) would allow the applicant to dictate which open space would be of "suitable size, topography and general character for its purpose." If this were the case, the need for the planning commission, vis-a-vis open space, would be obviated since it would have no control over the application of its regulations and would be at the mercy of the applicant with respect to the suitability of a particular open space. See The Bridgeport Hydraulic Co. v. Planning ZoningCommission, supra (to adopt the applicant's position "would impermissibly confer on the applicant the discretion which General Statutes, Sec. 8-25 and the . . . Subdivision Regulations expressly confer on the Commission to determine when and where open space lands will be required and located"). Common sense indicates that the regulations contemplate the Commission maintaining control over the selection of open space. Lauer v.Zoning Commission, supra, 220 Conn. 464 ("[c]ommon sense must be used in construing the regulation"). The Commission, under §4-24 (a), is the final arbiter of the location of open spaces in a subdivision.[1]
In its decision, the Commission also relied on Ridgefield Code § 4-31, entitled "Preservation of existing features," which amounts to a broad policy statement allowing the Commission to preserve "[e]xisting features which would add value to the development or to the town as a whole, such as trees, watercourses and similar irreplaceable assets, . . . through the harmonious design of the subdivision. . . ." This section can be interpreted to support retention of ridge lines since they are clearly "irreplaceable assets."
Article XII § [12-]2, also relied upon by the Commission in its decision, is an addendum to the Ridgefield Code master plan dealing with open spaces. It provides that "reference to the terms `ledges' and `ridge tops' shall be deemed to include such adjacent areas as may be necessary to preserve the appearance of the natural and unbroken skyline of such ledge or ridge top. " In connection with Article XII § [12-]2, the Commission also relied on the contents of the Ridgefield Comprehensive Town Plan, p. 56 (1980), which indicates that prominent land forms such as hilltops, ridge lines, rock outcrops and stands of trees should be considered priorities for preservation. The town plan may be utilized by the Commission as an interpretive tool in aid of the application of the regulations to a particular subdivision proposal. Smith v. Zoning Board of Appeals, supra, 227 Conn. 88. CT Page 12736 When the regulations relied upon by the Commission are read with the town plan as a backdrop, a strong policy supporting the preservation of ridge tops is apparent. As a member of the Commission noted, Ridgefield would not have its name if ridges were not a prominent feature of the town.
In addition to the foregoing, the Commission relied on Ridgefield Code § 4-25(a) that reads, in pertinent part, that "[i]n general, the reservation for open space purposes shall have an area of ten per cent of the total area of the subdivision. If the reserved area amounts to less than two acres, the Commission may require that the open space area be located at a suitable place on the edge of the subdivision so that additional land may be added at such time as the adjacent land is subdivided."
Czyr contends that the language delegating to the Commission the ability to determine which lands are suitable for open spaces is limited to circumstances where the area reserved is less than two acres. This argument ignores the provisions of General Statutes § 8-25 and Ridgefield Code § 4-24 (a) which specifically delegate discretion to the Commission to determine which open spaces are appropriate, and the provisions of article XII, § [12-]2, which recite that ridge tops are preferred areas for open spaces. See The Bridgeport Hydraulic Company v.Planning Zoning Commission, supra; Tondro, supra, 346.
Considering the authority granted by General Statutes §8-25 and the subdivision regulations, the Commission did not abuse its discretion in interpreting its regulations to allow the Commission, rather than Czyr, to designate where open spaces should be located. See Lauer v. Zoning Commission, supra,220 Conn. 464; Shailer v. Planning Zoning Commission, supra,26 Conn. App. 22.
A finding that the Commission maintains the authority to determine which portions of a subdivision will be mandated as open space is supported by other Connecticut Superior Court decisions. In Allegretti v. Cromwell Planning ZoningCommission, 8 CSCR 1262, 1263 (September 1, 1993, Clifford, J.), the plaintiff argued that it was inappropriate for subdivision regulations to delegate to the commission the authority to assign open space parcels, since the applicant would have to read the minds of the commission to determine where an appropriate open space would be located. The court rejected this argument, indicating that the commission, after weighing the facts, CT Page 12737 determined that an appropriate recreational area would be located in an area where the topography had less slope. Id. The court ruled that "the consideration of the topography and usefulness of the property were properly stated in the record and constituted a valid basis for the decision to move the open space parcel." Id. As an additional rationale, the court noted that "the town should not have to settle for the last, worst piece of a parcel." Id.
A similar holding is found in The Bridgeport HydraulicCompany v. Planning Zoning Commission, supra, where Judge Flynn determined that General Statutes § 8-25 and the Shelton subdivision regulations allowed the commission "discretion to require Bridgeport Hydraulic to provide open space in addition to and elsewhere than as shown on the applicant's proposed subdivision plan."
In support of its position that the Commission has no such authority, Czyr relies on Kelley Property Development Inc. v.Planning Zoning Commission, 6 CSCR 189, 190 (January 14, 1991, Walsh, J.). There, the commission denied the application based on the fact that the open space failed to contain sufficient dry land. Id., 189. The regulations contained no provisions concerning dry land, therefore, the commission relied solely upon the discretion granted to it by General Statutes § 8-25 and its subdivision regulations to support the denial. The court, in sustaining the appeal, found that the regulation was too vague in that it did not give the applicant sufficient notice of its rights concerning the open space requirements of wet versus dry land. Id., 190.
Here, however, in contradistinction to the facts of Kelley,
the subdivision regulations and the town plan contain affirmative statements that ridge lines should be protected. See Ridgefield Code Article XII, § [12-]2 ("reference to the terms `ledges' and `ridge tops' shall be deemed to include such adjacent areas as may be necessary to preserve the appearance of the natural and unbroken skyline of such ledge or ridge top"); Ridgefield Comprehensive Town Plan, p. 56 (1980) (prominent land forms such as hilltops, ridgelines, rock outcrops and stands of trees should be considered priorities for preservation). On these bases, theKelley case is factually distinguishable from the present matter.
Based on the foregoing, since the enabling statute, General Statutes § 8-25 (a), and the regulations grant discretion to the Commission to determine which open spaces in a subdivision CT Page 12738 are appropriate, and there is support in the regulations for the proposition that ridge top preservation is a conservation priority in Ridgefield, this court may not substitute its judgment for that of the zoning commission since its discretion was honestly and fairly exercised. Whittaker v. Zoning Board ofAppeals, supra, 179 Conn. 654. As a result, the Commission's actions in denying Czyr's application were not arbitrary, illegal or an abuse of discretion.
Czyr also claims that the Commission's denial of its application violates its rights under the taking clause of thefifth amendment and article 1, § 11 of the Connecticut constitution.[2]
In Aunt Hack Ridge Estates, Inc. v. Planning Commission,160 Conn. 109, 117-18, 273 A.2d 880 (1970), the Supreme Court held that a constitutional taking does not occur where a developer is required, by statute and subdivision regulations, to maintain a portion of a subdivision as open space as long as "the burden cast upon the subdivider is specifically and uniquely attributable to his own activity. Where the requirement is uniquely attributable to the subdivider's activity, it has been held to be a permissible exercise of the police power."
"[H]owever, the plaintiff is not entitled to judicial review of the merits of his regulatory taking . . . claim until he has met the requirement of establishing the finality of the agency determination." Gil v. Inland Wetlands Watercourses Agency,219 Conn. 404, 415, 593 A.2d 1368 (1991). "To demonstrate the requisite finality, a property owner asserting a regulatory taking . . . claim bears the burden of proving that the relevant governmental entity will not allow any reasonable alternative use of his property."[3] (Emphasis in original.) Id., citing Huckv. Inland Wetlands Watercourses Agency, 203 Conn. 525, 553,525 A.2d 940 (1987). "Merely because the total value of the property has decreased does not justify a conclusion that there has been an unconstitutional taking. Steele Hill Development, Inc. v. Townof Sanbornton, 469 F.2d 956 (1st Cir. 1972). A property may be subject to reasonable restraints without resulting in a taking." Manor Development Corporation v. Conservation Commission,180 Conn. 692, 695-96, 433 A.2d 999 (1980). In fact, to support a taking claim, the applicant must establish that "the economic utilization of the land is, for all practical purposes, destroyed." Horak v. State, 171 Conn. 257, 261, 368 A.2d 155
(1976). CT Page 12739
Czyr recognizes this finality requirement and concedes in its brief that "the fact that a developer does not get all of the subdivision lots he applied for does not result in a confiscatory taking of the property, where there is still some significant value from the approved lots. Manor Development Corporation v.Conservation Commission, supra, 180 Conn. 697."
To avoid the procedural pitfalls of the finality prerequisite, however, Czyr attempts to recast its taking claim as an actual physical appropriation of the property rather than a regulatory taking. Czyr argues that "[t]he Commission is not merely restricting the use of lot 7 for building purposes; it is forcing the subdivider to convey to the Town (or its agents) either legal title or a public easement over all or part of lot 7." Noticeably absent from Czyr's claim is any Record citation supporting its position. There is no statement in the Resolution of Decision suggesting that Czyr was required to convey lot 7 to the Town in order for approval to be received. Since the Commission did not incorporate the alleged mandatory conveyance in its decision, the court is not at liberty to probe for its existence. DeMaria v. Planning Zoning Commission, supra,159 Conn. 541.
Notwithstanding the foregoing, even if the court were to comb the record, it is devoid of evidence suggesting the Commission required such a quid pro quo. The transcript reveals that the Commission suggested that Czyr might grant a conservation easement to the Conservation Commission, however, there is no statement indicating expressly or by implication that a gratuitous conveyance of lot 7 by Czyr to the Town was a condition precedent to the approval of the subdivision. This finding is borne out by the following colloquy wherein, Ms. Masters, a member of the Commission, responds to Mr. Czyr's refusal to grant a conservation easement over lot 7 to the Town:
 Ms. Masters: Before you make such a definite no, it might be interesting the possibility of easing a portion of this that could be shared, so that you are not giving away total ownership but it could really be shared, and the property owners come into it understanding that it is an extension of property rights. It might ease the use of that land in the future, and it might protect it for really everyone. CT Page 12740
 Dr. Gelfman: The applicant has mentioned that he would rather discuss this kind of thing in private.
It is clear from the foregoing that the Commission was not attempting to exact title to or an easement over lot 7 as consideration for the approval of Czyr's application. Rather, they were just discussing an easement as one possibility to remedy the Commission's concerns. Ms. Masters described the suggestions as mere "fodder." Therefore, since no physical appropriation is present and there remains significant value in the subdivision, even if lot 7 is considered open space, Czyr has not carried its burden of proving that he has lost any reasonable and proper use of its property. Gil v. Inland Wetlands Watercourses Agency, supra, 219 Conn. 415; see also ManorDevelopment Corporation v. Conservation Commission, supra,180 Conn. 697 (where developer did not receive subdivision approval of all lots applied for, finality was not established as the subdivision maintained significant value). As a result, Czyr's taking claim must fail.
Accordingly, based on the foregoing, the court dismisses Czyr's appeal since the Commission acted reasonably in denying the subdivision application and Czyr has not proven finality for purposes of its taking claim.
Stodolink, J.