[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Warren Planning and Zoning Commission denied an application to approve a two-lot subdivision for reasons that do not appear in the record. The Commission acting through its chairman in May, 1987, informed the property owner, the plaintiffs' decedent, William Kline, that no subdivision approval was required. Kline resubmitted the subdivision again to the Commission in 1993, and was again told by the Commission that no subdivision application was required because the division of a 15.1 acre parcel into two lots was not a subdivision. Kline then recorded the map in the Warren Land Records, and sold one of the lots, containing 9.857 acres and a house, known as Parcel B to one Larry Kramer.
After the two-lot map was recorded and Parcel B was sold to Kramer, the zoning regulations changed. Under the regulations in effect in 1987, the two rear lots could be served by a common accessway to a public highway. After 1987 but before the Commission's ruling in November, 1993, the subdivision regulations were revised and in June, 1996, the zoning regulations were revised to require interior lots to own fee title to an access strip to the highway, and no longer allowed an easement or right-of-way to provide access to interior lots. The Estate of William Kline applied for and obtained a variance from the Zoning Board of Appeals of the revised access provision in the zoning regulations. The estate then filed the same subdivision application that had previously been filed with the Commission by Kline in 1987 and 1993 because it had been discovered that there had been a prior division of the land shortly after the town adopted subdivision regulations in 1977. The subdivision filed by the estate in 1997 was filed under a reservation of rights that an approval had already occurred as a matter of law in two respects: (1) an actual approval by the Commission in 1987 and 1993, or (2) an inferred approval for failure to act on a subdivision application Kline submitted in 1993. CT Page 13130
The plaintiffs, Thomas T. Adams and Carol B. Woodward are executors of the Estate of William S. Kline. On July 6, 1977, Kline purchased a 15.111 acre parcel of land from John H. Willenbrok and Lucille H. Willenbrok, together with a 50-foot wide right-of-way for access and public utilities running from Bliss Road in Warren to the interior 15.111 acre parcel. (Exhibits 14 and 16) On July 12, 1977 Kline obtained a zoning permit for a residence on the parcel. At that time the zoning regulations did not require lots to have frontage on public highways, and allowed access to rear lots by means of an easement. In 1987 Kline decided to divide the 15 acre parcel into two lots and contacted the Commission to learn its requirements. He submitted an application and a map showing his land and the adjacent Willenbrok property. (Exhibit 1) The Commission, which was a combined planning and zoning commission, also approved Kline's application for construction of a second house on the property. (See Exhibits 1, 2, 9 and 16) Kline made no misrepresentations to Vogel and did not intentionally mislead the Commission. (Exhibit 16; Exhibit 24, pp. 4, 7) Kline was unaware that subdivision approval was actually needed to divide the 15 acres into two parcels, and he accepted the Commission's determination. Kline did not record the map showing division of the parcel into two lots at that time.
Nothing further occurred until 1993, when Kline submitted to the Warren Conservation Commission and to the Planning and Zoning Commission an application for substantially the same two-lot subdivision. The proposed map of the property showed the two lots, the adjacent Willenbrok land and a 50-foot wide accessway. The Conservation Commission approved the two-lot subdivision as the town's inland wetlands agency on November 1, 1993. (Exhibit 16) In November, 1993 Kline then submitted the same two-lot subdivision plan to the defendant Commission together with a letter showing approval by the health district of a septic system for the vacant lot, Parcel A. (Exhibits 2 and 16)
At its meeting of November 9, 1993, the Commission voted to return the two lot subdivision application to Kline because it determined that the prior approval in 1987 was still valid and that the Commission's approval was not required to subdivide the land. (Exhibit 16 and Commission minutes of November 9, 1993.) Kline then recorded the map showing a division of the land into two parcels in the Warren Land Records on November 15, 1993 as Map #611. (Exhibits 14 and 16) The Warren Zoning Enforcement Officer by letter dated November 17, 1993 confirmed that Kline CT Page 13131 could record the map showing the division of the 15 acres into Parcels A and B, and that he could construct a dwelling on vacant Parcel A and sell the two lots as separate parcels. (Exhibit 16 and Letter of martin J. Connor, Warren Zoning Enforcement Officer, dated November 17, 1993 in Exhibit 2)
In December, 1993 Kline conveyed Parcel B containing 9.857 acres to Larry Kramer by deed recorded in Volume 44, page 827 of the Warren Land Records, together with rights in common with others over the 50 foot wide accessway, but reserving for the benefit of Parcel A a right-of-way. (Exhibits 14 and 16) At the time of that conveyance, neither the zoning regulations nor the subdivision regulations required a rear lot to have separate frontage on a town road. Kline and Kramer also entered into a driveway maintenance agreement, also recorded in the Warren land Records, containing the terms and conditions for maintenance of the common driveway over the access strip. Kramer purchased the Kline house on Parcel B with full knowledge that there was a 5 acre lot (Parcel A) that was serviced by the common driveway. He was also given a right of first refusal to buy Parcel A. The deeds and maps show that Kramer was not buying the entire parcel and knew that Kline was creating another building lot where a house would eventually be constructed. (Exhibit 13; Exhibit 16, pp. 28, 29; Exhibit 17)
§ 7.2 of the zoning regulations in November 1993 allowed interior lots which have less than the required minimum frontage on a town road but met all other minimum lot requirements of the zoning regulations to obtain access over a 50 foot wide right-of-way to a town road. § 7.2 also stated that "interior lots may be permitted in a subdivision under these regulations and under the provisions of the Warren subdivision regulations." The access strip on Map #611 was 50 feet in width between the public highway and Parcels A and B. Parcel A contains 5.255 acres and Parcel B contains 9.857 acres.
§ 7.2 of the zoning regulations (and § 5.4.2 of the subdivision regulations, which also concerns interior lots) were amended after the Kline two-lot map was recorded and Parcel B was conveyed to Kramer. § 5.4.2 of the subdivision regulations allows the Commission, when acting on subdivisions, to permit interior lots "according to the provisions of the Warren Zoning Regulations." Both regulations now require a separate access strip for each interior lot, with a minimum separation distance of 150 feet between access strips at their intersection with the CT Page 13132 existing street. Parcels A and B do not and cannot conform to that requirement. As a result, the plaintiffs applied to the Warren Zoning Board of Appeals for a variance of § 7.2 of the zoning regulations. The Zoning Board of Appeals granted the application on February 5, 1997 to allow Parcel A and Parcel B to share the existing 50 foot wide right-of-way for access purposes to Bliss Road. (Exhibits 4, 5 and 16)
After obtaining the variance, the estate filed the same two-lot subdivision application as the 1993 plan with the Commission. The application was filed to validate the prior subdivision because § 7.2 of the Zoning Regulations and § 5.4.2 of the Subdivision Regulations had been amended since 1993. A public hearing was held and concluded on May 13, 1997. On June 10, 1997 the Commission voted on the application. A motion to approve the subdivision failed to pass by a vote of 0-5. The Commission made no additional vote to deny the subdivision, and did not assign any reasons for its denial. (Exhibit 22) The plaintiffs then brought this appeal to the Superior Court.
 I
The plaintiffs, Thomas T. Adams and Carol B. Woodward, are co-executors of the Estate of William S. Kline. At the time of his death Kline was the owner of Parcel A on Map #611, which was one of the two lots shown on the 1997 subdivision application. The executors of an estate are the proper parties to bring legal proceedings for the estate. Isaac v. Mount Sinai Hospital,3 Conn. App. 598, 600. The owner of the property which is the subject of a subdivision application to a planning commission is aggrieved by denial of the application. Winchester Woods Associates v.Planning and Zoning Commission, 219 Conn. 303, 308; BossertCorporation v. City of Norwalk, 157 Conn. 279, 285.
When reviewing a subdivision application, a planning commission acts in an administrative capacity. Reed v. Planningand Zoning Commission of Town of Chester, 208 Conn. 431, 433; RKDevelopment Corporation v. City of Norwalk, 156 Conn. 369, 376;Beach v. Planning and Zoning Commission of Town of Milford,141 Conn. 79, 84. The Commission is limited to determining whether or not the subdivision application complies with the subdivision regulations. R.B. Kent Son, Inc. v. Planning and ZoningCommission of Town of Ledyard, 21 Conn. App. 370, 373; Reed v.Planning and Zoning Commission of Town of Chester, supra, 433. When reviewing a subdivision application, the Commission is CT Page 13133 controlled by the subdivision regulations which it has previously enacted. Town of Westport v. City of Norwalk, 167 Conn. 1541
at 155, 157; Beach v. Planning and Zoning Commission of the Town ofMilford, supra, 83. A planning commission cannot disapprove a subdivision application for a reason or based upon a standard not contained in its existing regulations. RK Development Corporationv. City of Norwalk, supra, 377; Beach v. Planning and ZoningCommission of Town of Milford, supra 85. The Commission must approve a subdivision if it conforms to the subdivision regulations. Reed v. Planning and Zoning Commission of Town ofChester, supra, 433; Paige v. Town Plan Zoning Commission ofTown of Fairfield, 35 Conn. app. 646, 657; RK DevelopmentCorporation v. City of Norwalk, supra, 376; Gagnon v. MunicipalPlanning Commission of City of Ansonia, 10 Conn. App. 54, 57.
 II
There is a material issue whether a variance was required at all because (1) both parcels were nonconforming lots which existed before the enactment of the access restriction in both the zoning and subdivision regulations, and (2) the prior approval of the division of the land exempted both lots from changes in the zoning and subdivision regulations. However, assuming a variance was needed for Parcel A, the variance granted by the Zoning Board of Appeals cured any noncompliance with the access restriction regulations.
On February 5, 1997, the Warren Zoning Board of Appeals granted the plaintiffs' variance application to allow Parcel A and Parcel B which were interior lots, to share the 50-foot wide right-of-way for access purposes. (Exhibits 4 and 5) The Board recognized that the change in the regulations occurred in June, 1996, that the splitting of the lots preceded the change to § 7.2, and the change in regulations created the hardship. (Exhibit 16 attachments) This variance was no appealed and is a final, binding decision. Beit Havurah v. Zoning Board of Appeals,177 Conn. 440, 446, 451. The current version of § 7.2 of the Zoning Regulations is extensive. See Warren Zoning Regulations and Exhibit 9 (Letter from Town Counsel dated april 7, 1997, p. 2). The only parts of § 7.2 that Parcels A and B did not meet were fee simple ownership of two separate access stirps and the minimum of 50 feet of frontage because neither parcel owns the access strip in fee simple. (Exhibit 9, pp. 2 and 3) [ § 7.2 also contained a provision of a minimum distance of 150 feet between access strips at the intersection with the existing CT Page 13134 street, but the variance allowing one accessway for two lots cures noncompliance with that additional provision.] The variance also negates any claim of noncompliance of a comparable provision in § 5.4.2 of the Subdivision Regulations which allows a planning commission to permit interior lots "according to the provisions of the Warren Zoning Regulations." See Subdivision Regulations § 5.4.2 and Exhibit 9, pp. 2, 3.
Once a variance is granted by the zoning board of appeals and recorded pursuant to § 8-7 or the General Statutes, it is a legal status granted to the parcel of land without regard for ownership and runs with the land. Reid v. Zoning Board ofAppeals, 235 Conn. 850; Garibaldi v. Zoning Board of Appeals,163 Conn. 235, 239; § 8-6(b) C.G.S. It is an authorization obtained from the zoning board of appeals to use the property in a manner otherwise forbidden by the zoning regulations. Grillo v.Zoning Board of Appeals, 206 Conn. 362, 372; Carlson v. ZoningBoard of Appeals, 158 Conn. 86, 90. After the Zoning Board of Appeals granted the variance, that became the applicable zoning regulation for the subject property.
Even though a zoning board of appeals can only vary the zoning regulations and not the subdivision regulations, there are two reasons why the variance of § 7.2 was binding upon the planning commission in reviewing this subdivision. First, the subdivision regulations expressly state that interior lots are allowed under the provisions of the zoning regulations, which would be the provision in § 7.2 of the zoning regulations. The variance of § 7.2 allows the existing accessway for two lots because otherwise the Planing Commission would be disallowing access as authorized by the Zoning Board of Appeals in varying the zoning regulations. Second, § 7.2 is more comprehensive than § 5.4.2 of the Subdivision Regulations which was varied by the Zoning Board of appeals. The Commission here is a combined planning and zoning commission with similar regulations, presumably intended to create consistent results, so the variance of § 7.2 of the Zoning Regulations has the effect under Warren's regulatory scheme of preventing § 5.4.2 from blocking approval of this subdivision.
 III
After the case of Dooley v. Town Plan and Zoning Commission,151 Conn. 151, § 8-26 of the General Statutes was amended to allow validation of prior, illegal subdivision. § 8-26 now CT Page 13135 provides in part that plans for subdivisions
 including subdivisions and resubdivisions in existence but which were not submitted to the commission for required approval, whether or not shown on an existing map or plan or whether or not conveyances have been made of any of the property included in such subdivisions or resubdivisions, shall be submitted to the commission with an application in a form to be prescribed by it. The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter.
On May 1, 1987, William Kline wrote to the Planning Commission with an application to subdivide the 15.1 acres. There was evidently contact with the Commission or its chairman because Kline wrote a second letter to William Vogel, the chairman, mailed May 26, 1987 explaining his intentions. Vogel responded by letter of May 30, 1987 that Kline could divide his land into two parcels and that the Commission did not treat this as a subdivision because it was not a division of land into three or more parts. Vogel made this ruling after conferring with the Commission's attorney. (See Exhibits 1 and 2)
Kline resubmitted the application to the Commission on November 9, 1993 with a map showing division of the land into two lots conforming to the zoning regulations, served by a 50-foot wide right-of-way from the lots to Bliss Road. At its meeting of November 9, 1993, the Commission again determined that it did not have to approve the two-lot subdivision application because of the decision made in 1987 which was still valid. The Commission requested a new zoning application to be completed by Kline, which the Zoning Enforcement Officer confirmed by letter of November 17, 1993 would be approved when a house was built. (See Exhibits 2, 15 and 16)
Under § 8-26 of the General Statutes, a planning commission has the authority to determine whether the division of any land is a subdivision or resubdivision. Lombardo v. Planningand Zoning Commission, 43 Conn. Sup. 508, 513, affirmed38 Conn. App. 812. § 8-18 of the General Statutes defines subdivision as CT Page 13136
 The division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future of sale or building development. . .
§ 2.1 of the Warren Subdivision Regulations has the same definition. Whether a specific division of land is a subdivision under these definitions is a factual question which the Commission can decide. The Superior Court cannot substitute its discretion for the Commission's findings on what is essentially a factual determination unless the decision was arbitrary, unreasonable or illegal. Molic v. Zoning Board of Appeals,18 Conn. App. 159, 164-166 (finding of a zoning board of appeals that two adjacent parcels had not been merged so that their subsequent division did not require subdivision approval). More important, whether or not the Commission was correct in November, 1993 in ruling that the division of the land was not a subdivision, that ruling is now final and binding upon the commission and the opponents to the subdivision. The Commission's determination that the division of land was not a subdivision was appealable under §§ 8-8 and 8-28 of the General Statutes. The failure to appeal from a decision of a zoning or planning commission makes its action final so that the correctness of it is no longer subject to review in later proceedings. Upjohn Co.v. Zoning Board of Appeals, 224 Conn. 96, 102; Carpenter v.Planning and Zoning Commission, 176 Conn. 581, 598; Haynes v.Power Facility Evaluation Council, 177 Conn. 623, 629, 630.
On the other hand, if the defendants contend that the Commission's ruling on Kline's application in November, 1993 was not an approval of the application, then the Commission failed to act within the statutory time limits in § 8-26d of the General Statutes, and there was an inferred approval of the subdivision application. Caldrello v. Planning Board,193 Conn. 387, 392; Gervasi v. Town Plan and Zoning Commission,184 Conn. 450; Viking Construction Co. v. Planning Commission,181 Conn. 243, 246-248.
The Commission probably did not publish a notice of its ruling that the division of Kline's property was not a subdivision. However, as pointed out by the applicants' attorney by letter and at the public hearing (Exhibit 16, p. 3; Exhibit 24, p. 9) the validating act would cure this problem. The validating CT Page 13137 acts can cure by amendment the failure of a planning commission to follow proper procedures and even cure jurisdictional defects.Kelly v. Planning and Zoning Commission, 13 Conn. App. 446, 448;Capalbo v. Planning and Zoning Board of Appeals, 208 Conn. 480,489. Special Act 95-1, § 6(c) validates any action taken by a planning commission, including failure to publish notice either of a public hearing or the action taken by the commission. The same validating act provides in part in § 6(b) that the use of a lot shown on an approved subdivision map is validated where the filed or recorded subdivision map fails in any manner to comply with any requirement of any general law. After the Commission approved the two-lot subdivision map in November, 1993 and Kline recorded it in the land records, it became a valid map, even though it was not signed by the Commission chairman as roved by § 8-25, after the enactment of Special Act 95-1.
 IV
As previously stated, the Commission's prior rulings in 1987 and 1993, even if incorrect, are not longer subject to reversal or review. The estate was not legally required to submit a new subdivision application, but having done so, the Commission could not reverse its prior position and deny the subdivision. Where a land use agency approved a prior application, it cannot properly disapprove a second one which requests the same thing without evidence of changed conditions. Mason v. Board of Zoning Appeals,143 Conn. 634, 638, 639; Grace Community Church v. Planning andZoning Commission, 42 Conn. Sup. 256. See also Sharp v. ZoningBoard of Appeals, 43 Conn. App. 512, 526, holding that a land use agency cannot reconsider a decision after its decision is published. If no publication occurred, reconsideration would be barred after the effective date of the validating act. The commission acted within its statutory jurisdiction in November, 1993, since § 8-26 allows a planning commission to determine whether a division of land was a subdivision.
§ 8-26a of the General Statutes precludes the Commission from applying the new zoning or subdivision regulations to the subdivision which the Commission approved in November, 19093. Subsection (a) of the statute provides that when there is a change in subdivision regulations adopted by the planning commission, a subdivision which was approved prior to the effective date of the change by the planning commission is not required to conform to the change in subdivision regulations. There is a comparable provision in subsection (b) of § 8-26a
CT Page 13138 which applies to changes in the zoning regulations, and lots on a subdivision map for residential property which were approved by the planning commission prior to the change of the zoning regulations are not required to conform to those changes. As a result, even without the variance of the zoning regulations granted by the Zoning Board of Appeals, Parcel A and Parcel B are not required to conform to the change in the regulations.
For the reasons stated, the appeal is sustained and the Commission is directed to sign the subdivision map. Beach v.Planning and Zoning Commission, 141 Conn. at 85; RK DevelopmentCorporation v. Norwalk, 156 Conn. at 376.
Hon. Walter M. Pickett, Jr.State Judge Referee