THE LORDSHIP PARK ASSOCIATION *v.* BOARD OF ZONING APPEALS OF THE TOWN OF STRATFORD

BROWN, C. J., JENNINGS, INGLIS and O'SULLIVAN, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued April 11—decided July 11, 1950

*Robert E. Trevethan,* with whom was *Robert B. Hilgendorff,* for the appellant (plaintiff).

*William Reeves,* with whom was *Frederick Pope, Jr.,* for the appellee (defendant).

INGLIS, J. The question involved in this case is whether the board of zoning appeals of the town of Stratford acted illegally or arbitrarily in refusing to approve the plaintiff's plan for a subdivision of its land. The finding, in which no material changes should be

made, discloses the following facts: The land owned by the plaintiff, comprising about forty acres, was located in the southeasterly part of the town of Stratford. The portion which the plaintiff desired to subdivide had a shore front on Long Island Sound of about 2860 feet. The ordinances of the town provided that no land should be subdivided and sold until the map or plat showing the subdivision had been submitted to and approved by the town planning and zoning board, but no standards were set up to control the board in its action. Stratford Zoning Regs. (1945) p. 38 et seq. In accordance with the provisions, on June 19, 1948, the plaintiff submitted to the board a petition for the approval of its proposed subdivision, accompanied by a map depicting the plans. The map showed a projected road, Park Boulevard, running easterly 1040 feet from a road to be known as York Street to Cove Place, a proposed road which would intersect Park Boulevard at right angles. York Street and Cove Place both extended northerly from Park Boulevard to intersect Prospect Drive, which apparently was a through street. Park Boulevard was shown to be roughly parallel with, but 150 feet to the north of, the shore line of Long Island Sound. The space between the road and the water was designated as "Reserved for Park Purposes." The layout provided for no other road to parallel the shore line anywhere in the subdivision.

While the plaintiff's petition was pending before the board, some negotiations were had with reference to the possible purchase of the plaintiff's property by the town. Because these negotiations were in progress, the town planning and zoning board delayed action on the plaintiff's petition. It was not until October 6, 1948, that the board acted, although the ordinance provided: "The Town Planning and Zoning Board shall approve or disapprove such map or plat within 60 days

after such map or plat has been submitted to it."
Stratford Zoning Regs. (1945) p. 38, § 3. The board
refused to approve the plan. The record of its vote
showed that "The consensus of the Board was that . . .
it felt that a roadway or drive eventually should be con-
structed along the shore side on Long Island Sound to
turn northerly and connect with Short Beach Road."

From that decision the plaintiff appealed to the
board of zoning appeals. The board held a hearing on
the matter, but no action was taken on the appeal at
that time. The negotiations for the purchase of the
property were still in progress, and it was not until
November 8, 1948, that the town council voted not to
make the purchase. On November 26, at an executive
session, the board of zoning appeals decided to deny
the plaintiff's appeal and sustain the action of the town
planning and zoning board. The minutes of the meet-
ing disclose the basis of the decision to have been as
follows: "It was acknowledged that the Lordship Park
Association had met the requirements of the Town with
regard to their subdivision, and that further the towns-
people indicated by vote at the polls that they did not
want the Town Council to purchase this property for a
public beach and park. . . . As early as 1927 a master
plan was developed by the Town, with the understand-
ing that the Planning and Zoning Board would approve
only such layouts for future developments that con-
formed to it. In 1936 the Town Council in official
action approved a preliminary plan. Both these plans
are on file in the Town archives. Both provided for a
continuous public right of way, facing the entire beach
front on Long Island Sound, except that already occu-
pied by private dwellings. Appellant should have
planned his development to conform to these plans.
We believe the Planning Board's refusal to approve the
plot plan was based upon lack of conformation to the

master plans. We are bound by the official action of the Town Council in 1936, not to approve the plans for this development as submitted."

The reference in those minutes was to a vote of the town council of May 11, 1936. That vote purported to be adopted pursuant to the authority of a special act of the General Assembly, as amended in 1935, which provided that the town council of Stratford should have "the power to provide a master plan or plans for the entire town or for any part thereof, which plan or plans may provide for the future layout and location of all highways . . . and, if such plan or plans be adopted, may prescribe by ordinance, rules and regulations, determining the manner in which such plan or plans shall be made, filed, recorded, changed, altered or amended . . . and may by rule and regulation compel compliance with such plan or plans." 22 Spec. Laws 349, 350, § 1.

The vote of the town council of May 11, 1936, was passed without giving interested persons an opportunity to be heard and was simply that "the 'Preliminary Plan dated May 11th, 1936, . . . made by Town Planning Board . . .' as recommended by the Planning Board, be adopted and used as a guide for the future development of the Town, subject to such future changes as may be made." The town council has never adopted any rules or regulations providing for the manner and method by which plans are to be approved and adopted by it, nor any ordinance, regulation or rule compelling landowners to comply with and observe the preliminary plan.

The preliminary plan showed a proposed public road over the property which is now owned by the plaintiff along the shore of Long Island Sound; it did not purport to locate the road definitely but only to indicate the general vicinity where it was deemed advisable to construct such a road. Under the ordinance in effect

at the time of the plaintiff's application, the roads shown on any subdivision layout which was approved were required to be constructed at the expense of the subdivider. If the plaintiff were compelled to modify its plan to comply with the condition that a road be constructed along the shore line, it would have to modify its whole plan at an expense to it of many thousands of dollars.

From the foregoing statement of facts it is apparent that the sole ground upon which the board of zoning appeals rested its disapproval of the plaintiff's application was that it was bound by the action of the town council in adopting the town plan in 1936. The defendant now suggests that the board might also have taken into consideration the fact that the plan submitted by the plaintiff showed a series of two right-angle turns in the roadway along the water front which the board might have deemed a traffic hazard. The minutes of the meeting, read in the light of the fact that it was the desire of the town officials to procure a water-front highway as contemplated in the town plan, negative any possible claim that this consideration was in the minds of the board. The trial court did not find that the action of the board was based upon this ground but, on the contrary, found that the plan met all of the requirements of the town under and pursuant to the subdivision ordinance. The only ground upon which the board of zoning appeals could have based its action was that the subdivision plan did not conform to the preliminary town plan of 1936. Accordingly, the question to be decided is whether the board of zoning appeals acted illegally or arbitrarily in denying approval of the plaintiff's plan on that ground.

The defendant concedes, as indeed it must, that the preliminary plan adopted in 1936 was not effective to limit the property rights of any landowner. The vote

of the town council at that time was not to adopt a definitive town plan. It was that the "preliminary plan" be adopted and used as a guide for future development subject to future changes. No opportunity had been given property owners to be heard with reference to the vote, and no regulations were ever adopted compelling compliance with the plan. The defendant nevertheless takes the position that in acting upon the plaintiff's application it was entitled to take into consideration and be guided by the informal preliminary plan and that to do so was no abuse of its discretion. The weakness of that position is apparent. If the board could in its discretion disapprove the plaintiff's plan solely because it was in conflict with the town plan, then the merely preliminary town plan, operating to control the discretion of the board, would have the effect of curtailing the private property rights of the plaintiff.

The power to adopt a town plan, in so far as it affects private property rights, rests solely upon the police power. For that reason such a plan may restrict a landowner in the use of his property in such manner as he sees fit only to the extent that such restriction is reasonably necessary for the public health, safety or welfare. *Windsor* v. *Whitney*, 95 Conn. 357, 366, 111 A. 354; see *State* v. *Miller*, 126 Conn. 373, 377, 12 A. 2d 192. If the use of a person's property is to be affected by any such restrictions as may be imposed by a town plan, there must be at least a determination by the legislative body authorized to adopt such a plan that the public welfare will be furthered by the imposition of the restrictions. Such a determination may not be made except after notice to the property owners affected, with an opportunity for them to be heard. *Hartford Trust Co.* v. *West Hartford*, 84 Conn. 646, 650, 81 A. 244; *Northrop* v. *Waterbury*, 81 Conn. 305,

309, 70 A. 1024. When it is made, there must be an opportunity for an appeal to the courts on the question whether the restriction is justified under the police power. See *Windsor* v. *Whitney,* supra, 369.

In the present case, by reason of the fact that the town council never formally adopted a definite town plan, the plaintiff had never, before its subdivision plan was submitted, had an opportunity to be heard either by the town council or by a court on the question whether the restrictions imposed by the preliminary plan on the plaintiff's property were within the police power or were reasonably necessary to promote the public welfare. By taking the position that its decision on the plaintiff's application was controlled by the fact that the town council had voted to adopt the so-called preliminary plan, the defendant precluded the plaintiff from any such hearing. It is obvious that the vote could have no such effect.

As already pointed out, the real intent of the adoption of the preliminary plan by the council was to set an ideal of town planning toward which the town should aim. The plan was to be a goal which the town officials should have in mind when it came to laying out new highways and parks. It was not intended, nor could it have been intended, as anything which would operate to curtail the rights of private property. Specifically, it was not designed, nor could it have been designed, to limit a landowner in the use of his land as he saw fit because of the possibility that at some time in the future some portion of it would be taken for one of the highways shown on the preliminary plan. Such a limitation on the use of his land could come only after, and by way of, the taking of his land for highway purposes, not under the police power, but under the power of eminent domain.

Such being the purport of the preliminary plan, it is

apparent that the board of zoning appeals was not justified in refusing to approve the plan of the plaintiff for the subdivision of its property on the ground that it did not contemplate the construction of a road in the location indicated roughly on the preliminary town plan. To justify the action of the board on that ground would be to give an effectiveness to the preliminary town plan by indirection which it was not intended to have and which, under the constitution, it could not have. The result of the board's decision that its discretion was controlled by the existence of the town plan was that the plaintiff either had to abandon its plans for the use of its property or modify them to conform to the plan. The adoption of the preliminary plan was not effective to produce that result directly. It ought not to be permitted to accomplish it indirectly through the action of the board of zoning appeals. That board, in denying the plaintiff's application on the ground on which it did, acted illegally, not to say arbitrarily.

This conclusion is determinative of the appeal, and the plaintiff's further claims require no discussion.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the appeal and ordering the defendant to approve the plaintiff's application.

In this opinion the other judges concurred.