# RALPH R. BEACH *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF MILFORD

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued February 3—decided March 9, 1954

*Richard H. Lynch,* for the appellant (defendant).

*Joseph Weiner,* with whom was *William Gitlitz,* for the appellee (plaintiff).

INGLIS, C. J. The plaintiff appealed to the Court of Common Pleas from the refusal of the town planning and zoning commission of Milford to approve his plan for a subdivision of a portion of his property. The court rendered judgment sustaining the appeal and from that judgment this appeal has been taken.

The court's finding has been attacked in many particulars. We believe that there was no occasion for the court to hear much of the evidence which was offered or to make a finding with so many immaterial details as were found. We again observe that an appeal from an administrative tribunal should ordinarily be determined on the record made before that tribunal, and only when that record fails to present the hearing in sufficient scope to determine the merit of the appeal or when some extraordinary reason requires it should the court hear evidence. *Cohen* v. *Board of Appeals on Zoning,* 139 Conn. 450, 453, 94 A.2d 793. But this aside, the facts, which are not in dispute, are the following: The plaintiff is the owner of a farm of about 100

acres in the northeast portion of Milford. In 1952 he entered into an agreement to sell 50 acres of it for $92,000 on condition that the approval of the defendant, hereinafter referred to as the commission, could be obtained for a subdivision of the land into 145 building lots as sites for single-family residences. Accordingly, application for such approval was made on October 15, 1952; it was denied on October 28, 1952.

The property in question is located in a residence A zone and is therefore, so far as the zoning ordinance of the town of Milford is concerned, available for use for either farming or residential purposes. By special act of the General Assembly, the defendant is given the powers of a town planning commission. 25 Spec. Laws 752, § 4. Consequently, so far as the matters involved in this case are concerned, it has the powers, and only the powers, conferred on municipal planning authorities by §§ 856 and 858 of the General Statutes. No master plan or plans of development as provided in § 856 have ever been adopted for the town of Milford.

Effective as of February 4, 1952, an ordinance regulating the subdivision of land in the town was adopted by the town council upon recommendation of the commission. This ordinance contains a rather elaborate set of regulations governing procedure in submitting applications and setting forth requirements as to the width and intersection of streets, block dimensions, pedestrian ways, easements, lot requirements and various other details. It does not contain any specific provisions granting the commission authority to reject a subdivision application on the ground that the development of the subdivision will increase the town's burden of providing schools, roads and police and fire protection or on the ground

that the financial condition of the town is such that it will not sustain an increased burden. The plan submitted by the plaintiff complied with the regulations which had been adopted.

The reasons given by the commission for its rejection of the plaintiff's application were these: "(1) This land is adjacent to a new development which will contain 79 homes. (2) The Council has stated that the financial situation of the town is such that no schools could be built in this area for some time. (3) The additional Police and Fire protection which would be needed in this area cannot now be provided due to the financial situation of the town. (4) The report of the school superintendent shows that the new school in this area will be inadequate to provide for the children already living in this area soon after it opens."

The trial court based its decision on the conclusion that the commission acted illegally in refusing its approval of the subdivision for the reasons it gave. The ultimate question before us is whether the court erred in so concluding.

As has already been pointed out, this case does not involve any question of zoning. See *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 294, 57 A.2d 259. The zoning ordinance permitted the use of the land in question for residential purposes, and the commission made no attempt to change the ordinance. If the commission had the power to disapprove the subdivision, it was solely by virtue of the authority conferred upon it as a municipal planning commission. The limits of that authority are defined in § 858 of the General Statutes.

So far as relevant to the present issue, § 858 reads: "No subdivision of land shall be made until a plan for such subdivision has been approved by

the commission. Any person, firm or corporation making any subdivision of land without the approval of the commission shall be fined not more than two hundred dollars for each lot sold or offered for sale or so subdivided. . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. No such regulations shall become effective until after a public hearing, notice of the time, place and purpose of which shall be given by publication in a newspaper of general circulation in the municipality at least seven days prior to the date of such hearing. Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health, that proper provision shall be made for water, drainage and sewerage, that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of development as described in section 856, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width as to provide an adequate and convenient system for present and prospective traffic needs and that in places deemed proper by the planning commission open spaces for parks and playgrounds shall be shown on the subdivision plan. The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided. . . ."

The significant feature of this statute is that, by its terms, the adoption of regulations is made a condition precedent to the exercise by a planning commission of any control over the planning of a subdivision. A planning commission may neither approve nor disapprove subdivision plans until after

it has adopted regulations to guide it in its approval or disapproval. The necessary implication of the statute is, therefore, that in passing upon such plans the commission is to be controlled by regulations which it has adopted. Any subdivision plan, such as the one proposed by the plaintiff in the present case, which complies with those regulations must be approved by the commission.

The defendant contends that a municipal planning commission is a legislative body and as such has power to legislate to the effect that no subdivision will be allowed which will cause an unbearable financial burden to the town. This contention is unsound for several reasons. In the first place, it is clear from the statute that in exercising its function of approving or disapproving any particular subdivision plan, as distinguished from its function of adopting regulations, a municipal planning commission is acting in an administrative rather than legislative capacity.

In the second place, in the performance of its legislative duties in adopting regulations pertaining to subdivisions, such a commission is restricted by the statute both as to the method of procedure and as to the subject matter which the regulations may cover. It may adopt regulations only after notice and public hearing. See *Lordship Park Assn.* v. *Board of Zoning Appeals,* 137 Conn. 84, 90, 75 A.2d 379. In the present case there had been no notice of a proposal to change the regulations to prohibit a subdivision which would overburden the town financially. So far as the subject matter of regulations by the commission is concerned, the statute specifies their nature in great detail. There is nothing in § 858 which authorizes regulations prohibiting the subdivision of land because it would place additional

financial burdens upon the town. See *Simon* v. *Needham,* 311 Mass. 560, 565, 42 N.E.2d 516; *DeMott Homes at Salem, Inc.* v. *Margate City,* 136 N.J.L. 330, 334, 56 A.2d 423, aff'd, 136 N.J.L. 639, 57 A.2d 388.

In the third place, even if the statute had given the commission power to legislate in this regard, it would not follow that the commission could, in one isolated case and without any standards to guide it, disapprove a subdivision for a reason which it would not be required to apply to all subdivisions as to which the same reason obtained. Such action would be special legislation of the worst type. It would amount to substitution of the pure discretion of the commission for a discretion controlled by fixed standards applying to all cases of a like nature. It would deprive the applicant of his property without due process of law. *Keating* v. *Patterson,* 132 Conn. 210, 215, 43 A.2d 659; *People* v. *Massieon,* 279 Ill. 312, 315, 116 N.E. 639. The action of the commission in the present case was not one taken in accord with any standards established for its guidance.

We conclude that, inasmuch as there was no regulation prohibiting a subdivision in the town of Milford for any of the reasons assigned by the defendant for its disapproval of the plaintiff's subdivision plan, its action in refusing approval was illegal. The plaintiff was entitled to an approval of his plan by the defendant.

There is no error.

In this opinion the other judges concurred.