[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 23, 1988, the plaintiff submitted an application to the defendant Commission requesting approval of an eighteen-lot subdivision known as Castle Hill, Section 4. At the same time the plaintiff submitted a copy of its application to the Stonington Inland Wetlands Commission pursuant to statute. The defendant Commission held a hearing on the application on May 17, 1988. On July 7, 1988, after reviewing the report of the Inland Wetlands Commission, the defendant Commission met and denied the application citing nine (9) reasons for the denial, to wit:
1. Chapter VI, section 2G — Reverter clause for cul-de-sac not shown;
2. Chapter VI, sections 3A and 1D — Street lights and trees not shown;
3. Chapter VI, section 2K — Sight lines at intersection;
4. Chapter VI, section 2P — Signs for streets;
5. Chapter VI, section 1G — Length of cul-de-sac;
6. Chapter VII, section 2 — Does not have complete sanitarian approval;
7 . Chapter VI, section G2 — Over 600 feet; project changed in Scope from sections to something different;
8. Chapter VIII, section 6 — Noncompliance. Plan sent to Conservation Commission re open space; CT Page 2814
9. Section 8.4 B4 of the Zoning Regulations — Names of adjacent owners and zone classifications of their property lacking.
The plaintiff has appealed this denial. The Court held a hearing on July 13, 1990, at which time the parties were heard. The Court finds the plaintiff, as owner of the premises, to be aggrieved. Bossert Corporation v. Norwalk,157 Conn. 279, 285.
In acting on a subdivision application, a planning and zoning commission acts in an administrative capacity. JM Realty Company v. Norwalk, 156 Conn. 185, 190; Beach v. Planning Commission, 141 Conn. 79, 84. In passing on subdivision plans the commission is controlled by the regulations it has adopted. If the plan conforms to the regulations, the commission has no choice but to approve it. Westport v. Norwalk, 167 Conn. 151, 157. On the other hand, if the commission states its reasons on the record, the appeal must fail if any one of such reasons supports the commission's actions. Crescent Development Corporation v. Planning Commission, 148 Conn. 145, 150; Blakeman v. Planning Commission, 182 Conn. 303, 306.
As noted supra, the Commission stated nine reasons for denial of the application. Reasons shown as 1 through 4 describe requirements that certain matters be shown on the application, either on the final subdivision plan or on an accompanying map. In its brief the plaintiff argues that such matters were either waived by the Commission or that they could be handled by a modification.
A review of the filed documents, including the transcript, will not support such argument.
a. Chapter VI, section 2G reads in part, "Such reverter clause shall also be inserted on the final subdivision plan and incorporated into the deed for any lot so affected and to be sold."
b. Chapter VII (not VI, as in record) section 3, reads in part: "The location of all underground wire utilities and street light poles shall be indicated on a map submitted with the application for a subdivision." There appears no similar reference as to trees.
c. Chapter VI, section 2K requires streets generally requires a sight line at right angles to the intersecting street for at least 100 feet. The section reads in part: "The sight line shall be shown on the map so as to become a CT Page 2815 permanent property requirement."
d. Chapter VI, section 2P reads in part: "Street signs. . .shall be shown on the Final Subdivision Plan."
The submission by the plaintiff did not meet the above requirements. While these matters might have been treated as conditions to approval, the Commission had it in its power to deny the application for failure to show the information on the application.
Reasons 5 and 7 both appear to address the length of cul-de-sac issue. Section VI, 2G reads in part, "Where cul-de-sac streets are included in a subdivision, they shall generally not exceed six hundred (600) feet in length." The proposal in the application calls for an extension by 1,000 feet of an existing 2,800 foot cul-de-sac, according to the determination by the Commission.
The plaintiff argues that the length of the cul-de-sac road should be measured from the street road shown on the map. The Court is bound by the interpretation of the Commission if it be deemed reasonable by the Court. See Baron v. Planning Zoning Commission, 22 Conn. App. 255. As the Supreme Court noted in Pascale v. Board of Zoning Appeals,150 Conn. 113, 116, "The interpretation of legislation presents a question of law. . . However, an administrative agency such as the board in the instant case is called on to determine the applicability of the law to a given state of facts presented to it." The function of the court is to decide whether the commission correctly interpreted the regulation and properly applied it to the facts before it. The Court finds that the Commission acted properly in determining that the proposed cul-de-sac exceeded the maximum length in the regulations. This is another valid ground to sustain the Commission's action. See Forest Construction Company v. Planning Zoning Commission, 155 Conn. 669, 675; Crescent Development Corporation v. Planning Commission, 148 Conn. 145, 150, and similar safety considerations set forth therein.
The Court further notes that the pertinent regulation on cul-de-sacs is not ambiguous. "Cul-de-sac" is defined in the regulations. "Generally" is defined in Webster's Ninth New Collegiate Dictionary as "b: as a rule, usually." The Commission was not in error in so applying the regulation.
The Commission also cited lack of complete sanitary approval as the sixth ground for denial. The plaintiff cites a colloquy at the public hearing to the effect that such CT Page 2816 information had been in the hands of the sanitarian for a year previous thereto. The defendant Commission apparently does not contend this. Accordingly, there is no support in the record or this reason.
The last reason cited was the failure to show names of surrounding owners and zoning classifications, citing section 8.4 B-4 of the Zoning Regulations. The Court notes that Chapter IV, section 2D requires the Final Subdivision Plan to show the names of present record owners of abutting properties. This information is shown on the maps filed with the applications (Maps 2 and 3) and there appears no reason why this information could not be transferred to a Final Subdivision Map. See Chapter III, section 3. The Court is directed to no citations why the plaintiff is required to comply with a filing requirement of the Zoning Regulations. There is no support in the record for this reason.
For the reasons set forth supra, to wit, failure to include the required information on the submitted maps and submitting of a plan calling for a cul-de-sac in excess of the maximum set forth in the regulations, the appeal is dismissed.
BURNS, J.