[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Bernard LaRiviere and Patricia LaRiviere appeal from the decision of the Defendant Planning and Zoning Commission of the Town of Deep River (the "Commission") denying their application for a two lot subdivision.
The Plaintiffs[1] had submitted an application for resubdivision of an existing lot known as Map 63, Lot 26-4, located on Essex Street in the Town of Deep River, Connecticut. Return of Record ("ROR"), Item 2. The lot was part of an original subdivision known as the "Blair Subdivision" which contained six lots and was originally approved in 1978. ROR, Item 7(g). The application was received by the Defendant Commission at its regular meeting of October 17, 1996. ROR, Item 3. A Public Hearing was held on the application on December 12, 1996. ROR, Items 4 and 5.
At the public hearing, the Plaintiffs requested, pursuant to Section 3.5 of the Deep River Subdivision Regulations, a waiver of the provisions of Section 6.9.6a of the Regulations. That section, which was a recent addition to the Regulations, provided that no shared driveway with a grade in excess of 12% would be permitted. The driveway that was proposed to serve the two requested lots already existed, and served both the subject parcel and a parcel abutting the lower portion thereof. See ROR, Item 7(a-2).
The Defendant Commission held its decision meeting on the application at its regular meeting on January 16, 1997. ROR, Item 10, page 2. At that meeting, the Defendant Commission approved the requested driveway grade waiver by a vote of six in favor to one opposed, but denied the subject resubdivision application by the unanimous vote of all seven voting members. Id.
By letter dated January 24, 1997 the Plaintiffs were informed of the decision denying i their application. ROR, Item 11. Notice of the decision was published on January 28, 1997. ROR, Item 12. The Plaintiffs have appealed, claiming that the decision denying their application was arbitrary, unreasonable and an abuse of CT Page 11913 discretion.
I. JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning authorities to the Superior Court. In order to take advantage of a statutory right of appeal, parties must strictly comply with the statutory provisions that create such a right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377
(1988). The statutory provisions are mandatory and jurisdictional m nature, with failure to comply resulting in dismissal of an appeal. Id.
A. Aggrievement
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192 (1996); Winchester Woods Associatesv. Planning Zoning Commission, 219 Conn. 303, 307 (1991). An "aggrieved person" includes the owner of the subject property.Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968). The plaintiff has the burden of proving aggrievement in the trial court. R R Pool Home, Inc. v. Zoning Board of Appeals,43 Conn. App. 563, 567-68 (1996).
The Defendant concedes, and the Court finds, that the Plaintiffs are parties aggrieved and have standing to take these appeals. The evidence established that they are the owners of the subject property. Plaintiffs Exhibits 1-3. The Plaintiffs are thus "aggrieved persons" under General Statutes § 8-8 (a) (1).[2]
B. Timeliness and Service of Process
General Statutes § 8-8(b) provides in pertinent part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further proves that "[s]ervice of legal process of an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the CT Page 11914 usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record indicates that this appeal was served upon the proper parties and commenced in a timely fashion.
II. SCOPE OF REVIEW
A. In General
Judicial review of decisions rendered by local zoning authorities is limited. A zoning authority "is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal." Francini v. Zoning Board of Appeals,228 Conn. 785, 791 (1994); Samperi v. Planning Zoning Commission,40 Conn. App. 840, 845 (1996). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,233 Conn. 198, 206 (1995). "The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. " (Internal quotation marks omitted.) Protect Hamden/North Havenfrom Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 543 (1991); Jaser v. Zoning Board ofAppeals, 43 Conn. App. 545, 548 (1996). The burden of proof to demonstrate that the zoning authority acted improperly lies with the plaintiff. Bloom v. Zoning Board of Appeals, supra,233 Conn. 206.
Where the zoning authority has collectively stated its reason for its decision the trial court must determine from the record whether the reasons assigned are reasonably supported by the administrative record and pertinent to the considerations to be applied under the applicable zoning regulations. DeMaria v.Planning Zoning Commission, 159 Conn. 534, 541 (1970). The decision must be sustained if even one of the stated reasons is sufficient to support it. Property Group, Inc. v. Planning Zoning Commission, 226 Conn. 684, 697 (1993). Where, however, "there is a failure to comply with the obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its CT Page 11915 decision." West Hartford Interfaith Coalition, Inc. v. TownCouncil, 228 Conn. 498, 515 (1994). "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citation omitted; internal quotation marks omitted.) Jaser v. Zoning Board of Appeals,
supra, 43 Conn. App. 548. This "substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts." Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 541 (1987). Reasons given by individual members of the zoning authority do not suffice, since they do not amount to the requisite formal, collective and official statement of the authority. West Hartford InterfaithCoalition, Inc. v. Town Council, supra, 228 Conn. 514.
B. Subdivision Applications
This is an appeal from the denial of a subdivision application. A Planning Commission is authorized to adopt regulations pursuant to General Statutes § 8-18, et seq., governing the subdivision of land. The subdivision regulations adopted by the commission must comply with the statutory requirements both in content and manner of their adoption.Avonside, Inc. v. Zoning and Planning Commission, 153 Conn. 232,236 (1965). The Commission may only adopt a plan or regulations governing subdivisions of land, or impose conditions on approval, within the authority given to them by statute. Aunt Hack RidgeEstates, Inc. v. Planning Commission, 160 Conn. 109, 115 (1970).
While a Planning Commission acts in a legislative capacity when adopting subdivision regulations, the application of those regulations to a subdivision is an administrative act. Since a Planning Commission acts in an administrative capacity when considering a subdivision application, the commission "has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Reed v. Planning Zoning Commission, 208 Conn. 431, 433 (1988); Langbein v.Planning Board, 145 Conn. 674, 679 (1958). "If it does not conform as required, the plan may be disapproved." ForestConstruction Co. v. Planning Zoning Commission, 155 Conn. 669,674-75 (1967); RK Development Corporation v. Norwalk,156 Conn. 369, 376 (1968). A Planning Commission may not disapprove a subdivision application for a reason, or based upon a standard, CT Page 11916 not contained in its subdivision regulations. Smith v. ZoningBoard of Appeals, 29 Conn. App. 28 (1992); Beach v. Planning Zoning Commission, 141 Conn. 79, 85 (1954); Federico v. Planning Zoning Commission, 5 Conn. App. 509, 514 (1985).
The regulations must be reasonably precise in the subject matter and reasonably adequate and sufficient to give both the Commission and those affected by its decision notice of their rights and obligations. Ghent v. Planning Commission,219 Conn. 511, 518 (1991). They must contain known and fixed standards applying to all cases of a like nature. Sonn. v. PlanningCommission, 172 Conn. 156, 159 (1976). "Although some of the standards may be general in terms, they . . . [must be] reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the variables involved since it would be impossible to establish one standard which would adequately cover all future cases." Id., 159-160.
"[T]he burden of showing that regulations are unconstitutionally vague rests with the plaintiff. . . . Moreover, the plaintiff is required to show that the regulation complained of is impermissibly vague as applied to the facts of the particular case." Barberino Realty Development Corp. v.Planning Zoning Commission, 222 Conn. 607, 620 (1992).
III. THE APPEAL
A. Reasons for Denial
The preliminary issue presented to the Court is the determination of the Defendant Commission's reasons for denying the application. The Commission's reasons have been stated differently at various times. The minutes of the January 16, 1997 meeting at which the Commission acted tersely state the following:
 Motion to approve was unanimously denied subject to Sections 5 and 6 of the subdivision regulations; staff reports; evidence received at hearing.
ROR, Item 10, page 2. The notice of decision sent to the Plaintiffs under date of January 24, 1997 expands on the reasons as follows:
The reason for denial is that the application was CT Page 11917 not consistent and not in compliance with the intent and specific sections of the Deep River Subdivision Regulations, including Sections 5, 6 and 7.
ROR, Item 11.
This appeal was served on February 6, 1997. At its regular meeting of April 17, 1997 the Defendant Commission, in approving the minutes of its January 16, 1997 meeting, amended the section dealing with the Plaintiffs' application, in pertinent part stating the reasons for denial in greater detail as follows:
 Motion to approve was unanimously denied subject to Section 5.2.5a that irregular lot shapes and uneven boundaries shall be avoided; the proposal adds a third dwelling creating yet another difficult access for emergency personnel as per Section 5.2.1. As proposed the original subdivision will have 75% rear lots far in excess of our guidelines in Section 7.3.1g.
Supplemental ROR, Item 14.
There is no transcript of the proceedings at either meeting. However, an organization has an inherent right to correct its minutes when submitted for approval. The substance of the amended minutes, including the specific reference to irregular lot shapes and rear lots is mentioned in the prior minutes, although the reasons for denial no longer rely upon Section 6. The Court will view the reasons for denial as those set forth in these amended minutes. The parties have done so in their briefs.
B. Review of Reasons for Denial
The Court will now review the reasons for denial pertinent to this decision.[3]
1. Regulations Section 5.2.5a.
Section 5.2.5a. of the Regulations reads as follows:
5.2.5 Lot Lines and Lot Shape:
a. Irregular lot shapes and uneven boundaries CT Page 11918 shall be avoided. Wherever possible, side lot lines should be at right angles to straight street lines and radial to curved street lines, unless lot lines are angled specifically for the purpose of preserving natural features or encouraging proper orientation of buildings for active and passive solar energy techniques.
It is part of Section 5 entitled "Design Requirements," dealing with design requirements concerning lots, streets, utility location, water and sewer, storm drainage and the like.
The Plaintiffs focus on the words "irregular" and "uneven" in the first sentence of Section 5.2.5a. These words are not specifically defined in the Regulations. Citing Sonn. v. PlanningCommission, 172 Conn. 156, 160-61 (1976), Plaintiffs assert that these words are too imprecise a standard to be valid subdivision regulations, and "give broad, almost unfettered authority" to the Defendant Commission. Plaintiffs' Brief, page 8.
Words and phrases in a statute are to be "construed according to the commonly approved usage of the language." Ford v. BlueCross Blue Shield of Connecticut, Inc., 216 Conn. 40, 62
(1990), quoting General Statutes § 1-1(a). Webster's Ninth New Collegiate Dictionary (copyright 1989) defines "irregular" in relevant part to mean "lacking perfect symmetry or evenness." The word "uneven" is defined therein in relevant part to mean "ragged, varying from the straight or parallel, not uniform, irregular."
 The symmetry of lot lines serves a specific and important function in land development. It mitigates against confusion and provides for the facile understanding of actual lot line boundaries. It allows property owners to easily ascertain by observation the approximate bounds of their land and that of neighbors. It mitigates against confusion, which is often precipitated by irregular boundary configurations and obtuse angles of departure.
Schultz v. Town Plan and Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-520361 (February 4, 1994, J.P. Sullivan, J.). CT Page 11919
These are pertinent considerations in the application of the regulations. The section contains identifiable standards. The Plaintiffs have not satisfied their burden of proof on vagueness.Barberino Realty Development Corp. v. Planning ZoningCommission, supra. The Court determines that Section 5.2.5a is valid and enforceable.
The Resubdivision Plan, showing the existing lot, the proposed resubdivided lots and the common driveway are depicted in the record in three maps or plans. ROR, Items 7(a), (a-1) and (a-2). The existing lot contains approximately 5.30 acres, and has a frontage somewhat in excess of 200 feet on the northerly side of Essex Street. The lot initially extends in a general northerly direction in a narrow strip for several hundred feet, as it rises from an elevation of 30 feet or less at street level to an elevation in excess of 100 feet at the neck of this narrow strip. It then fans out to a considerably wider area having a five-sided perimeter, with its upper or most northerly point at an elevation in excess of 190 feet.
Each proposed resubdivided lot would front on Essex Street. The westernmost lot, however, would have only approximately 20 feet of frontage, and only approximately that much width as it extends westerly and then northerly to the neck of the aforementioned narrow strip. Thereafter, interior lines would make four turns.
The lot shapes and boundaries appear to be contrived.[4]
The Defendant Commission's determination that the resubdivision plan does not comply with the requirements of Section 5.2.5a is reasonably supported by the record. There is substantial evidence to support its reasons. The Defendant Commission's denial of the application may be sustained on this ground alone.
2. Section 5.2.1
Section 5.2.1 in relevant part reads as follows:
5.2.1. Building Lots:
 Proposed building lots shall be of such shape, size, location, topography, accessibility and character that said lots can be occupied and used for building purposes without danger to the health and safety of the occupants, the CT Page 11920 neighborhood or the general public.
The Defendant Commission gave as a further reason for denial that "the proposal adds a third dwelling creating yet another difficult access for emergency personnel as per Section 5.2.1." The Plaintiffs assert that this reason is directly contradicted by the record. In support The Defendant Commission gave as a further reason for denial that "the proposal adds a third dwelling creating yet another difficult access for emergency personnel as per Section 5.2.1." The Plaintiffs assert that this reason is directly contradicted by the record. In support of this assertion, the Plaintiffs point to the Defendant Commission's waiver of the Section 6.9.6a prohibition of a driveway in excess of 12% grade, the memorandum from the Zoning Enforcement Officer in connection therewith, ROR, Item 7(g), as well as the memorandum from R.E. Leighton, Code Official, ostensibly supporting the application under conditions stated therein, ROR, Item 7 (d).
The ultimate decision rested with the Defendant Commission. It is not bound to follow the recommendations of supporting staff. Newtown v. Keeney, 234 Conn. 312 (1995). Moreover, the staff memoranda are at best only qualified support.
The Court cannot substitute its judgment for that of the Commission. The Commission may reasonably consider topography, lot layout and number of residences to be served by a common driveway. Accordingly, the Court finds that this reason for denial is also supported by the record.
3. Regulations Section 7.3.1g.
As its third reason for denial, the Defendant Commission determined that as proposed by the Plaintiffs' application, the original subdivision of which the subject lot is a part "will have 75% rear lots far in excess of our guidelines in Section 7.3.1.g." Supp. ROR, Item 14, page 2. The relevant subdivision is that known as the Blair Subdivision, depicted on ROR, Item 7 (k). The Plaintiffs acknowledge that their proposed resubdivision will create a rear lot. ROR, Item 6, page 30.[5]
Section 7.3.1 of the Regulations mandates the criteria to be met by rear lots. Section 7.3.1g provides in relevant part: CT Page 11921
 The maximum number of rear lots shall, in general, not exceed 30% of the total number of lots in any subdivision.
In their trial brief, the Plaintiffs assert three grounds for reversal. As one such ground, they contend that the 30% limitation of Section 7.3.1g as modified by the word "generally," and as implemented in practice by the Commission in other subdivisions, is too vague and imprecise a standard under the rule of Sonn v. Planning Commission, supra.
Section 7.3.1g is one of ten subsections of Section 7.3.1 prescribing criteria to be met by rear lots. These criteria deal with such matters as location and site conditions, driveway width and access, and shared driveways. Section 7.3.1j authorizes the Commissions to "impose other such conditions as it finds to protect the public health, safety and welfare . . ." The Court does not find the regulatory scheme of which Section 7.3.1g is a part to be impermissibly vague. Barberino Realty DevelopmentCorp. v. Planning Zoning Commission, supra.[6]
The Plaintiffs further assert that the Commission's 75% rear lot conclusion is both based on an improperly received and considered post-hearing memorandum submitted by the Town's Zoning Enforcement Officer (the "ZEO"), and is factually and legally wrong.
Additional facts are here pertinent. At its January 16, 1997 decision meeting, the Defendant Commission prior to voting received an undated two-page memorandum from the ZEO. ROR, Item 10, page 2. This memorandum is included in the Return of Record as Item 7 (g) but is attached to another one-page memorandum from the ZEO dated December 11, 1996 which had been submitted that date, prior to the public hearing. The Defendant concedes that this undated two-page memorandum was submitted after the date of the public hearing.
As a general rule, a zoning authority should not receive evidence submitted after close of the public hearing without providing the necessary safeguards. Parish of St. Andrew's Churchv. Zoning Board of Appeals, 155 Conn. 350, 358 (1967).
 This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. Not to CT Page 11922 do so would deny the applicants the right to be fully apprised of the facts upon which the board is asked to act.
Id.
The authority is entitled to technical and professional assistance from appropriate public officials and consultants.Spero v. Zoning Board of Appeals, 217 Conn. 435, 444 (1991). The test is two-fold. The first inquiry is whether the challenged nonrecord material so provided includes or is based on facts or evidence not previously presented at the public hearing. Noroozv. Inland Wetlands Agency, 26 Conn. App. 564, 573-74 (1992). If so, the second inquiry is whether the nonrecord material influenced the decision. Holt-Lock, Inc. v. Zoning PlanningCommission, 161 Conn. 182, 185 (1971).
It is clear that the opinion of the ZEO influenced the Commission's decision. The ZEO's conclusion that the proposed resubdivision would result in a total of 75% rear lots was specifically adopted by the Commission. The ZEO reached this conclusion by discounting in the computation certain lots in the original subdivision that had been deeded to the Deep River Land Trust.[7] However, the undated two-page memorandum merely repeats the same conclusion and factual basis therefor set forth in the ZEO's prior one-page memorandum. ROR, Item 7 (g). Moreover, the rear lot issue was discussed at the public hearing. ROR, Item 6, pages 25-30. Accordingly, consideration of this post-hearing memorandum was not improper. Norooz v. InlandWetlands Agency, supra.
The problem is the lack of a stated factual or legal basis for a conclusion that the lots deeded to the Land Trust should be discounted in the computation. Although the matter was Without such a stated basis, the conclusion cannot be supported or rejected. The Court cannot infer either the presence or lack of such a basis. If this were the only issue on appeal, the Court would sustain the appeal on this ground, and remand the matter for further hearing and proper determination of this question.[8] However, in view of the Court's rulings on the Defendant Commission's other stated reasons, such will not be the case. Property Group, Inc. v. Planning Zoning Commission,
supra.
For the reasons stated herein, the decision of the Defendant CT Page 11923 Commission is sustained and this appeal is dismissed.
DAVID L. FINEBERG SUPERIOR COURT JUDGE