[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 3, 2001, the Wiznias applied to the commission requesting approval of a twenty-five lot subdivision entitled Walnut Grove Estates. (ROR, Item A.) The commission received the subdivision application at a June 4, 2001 meeting (ROR, Item B, p. 1); and public hearings were held on September 4, 2001 and October 1, 2001. (ROR, Item H; Item K.) The Wiznias additionally submitted separate applications requesting special permits to create two rear lots in the proposed subdivision on October 11, 2001 (ROR, Item P; Item Q); which were denied by majority votes at the same meeting, but prior to the commission's determination of the subdivision application on December 17, 2001. (ROR, Item AA, pp. 2-3.) The hearing on the subdivision application was closed on November 5, 2001. (ROR, Item Z, p. 2.) At a December 17, 2001 meeting, a vote by the commission to approve the subdivision application with modifications resulted in a tie (ROR, Item AA, p. 3); and the commission denied the application. (ROR, Item DD.) The Wiznias timely commenced this appeal on January 8, 2002, challenging the commission's decision.
 JURISDICTION
General Statutes § 8-8 (b) provides in pertinent part that "any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located." "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
 Aggrievement
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) Harris v. Zoning Commission, CT Page 3748259 Conn. 402, 409, 788 A.2d 1239 (2002). Aggrievement is a factual issue, "and credibility is for the trier of the facts." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning ZoningCommission, 256 Conn. 674, 703, 780 A.2d 1 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of bringing an appeal and a plaintiff may prove aggrievement at the time of trial; Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991); or "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning ZoningCommission, supra, 703.
In the present appeal, the Wiznias allege aggrievement as the owners of the property affected by the commission's decision. (Appeal, ¶¶ 1, 2.) At trial, Robert Wiznia testified that he and his wife have owned and continue to own the property affected by the commission's decision. The Court finds the Wiznias have sufficiently alleged and proven aggrievement.
 Timeliness and Service of Process
Notice of a planning commission's decision is governed by General Statutes § 8-28, which provides that "[n]otice of all official actions or decisions of a planning commission . . . shall be published in a newspaper having a substantial circulation in the municipality within fifteen days after such action or decision. Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8."
General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (f) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
At trial, the parties stipulated to the fact that the commission's decision was published in the New Haven Register on December 27, 2001. This appeal was commenced by service of process on the town clerk, Stephanie Ciarleglio, and the Woodbridge Planning and Zoning Commission clerk, Kristine Sullivan, on January 8, 2002. The Court finds the appeal was commenced in a timely fashion by service of process on the proper parties. CT Page 3749
 SCOPE OF REVIEW
"The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal."RR Pool Patio v. Zoning Board of Appeals,257 Conn. 456, 470, 778 A.2d 61 (2001). "The [commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given . . . The evidence . . . to support any such reason [however] must be substantial." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, 258 Conn. 205, 221, 779 A.2d 750
(2001). "The credibility of witnesses and the determination of issues of fact are matters solely within the province of the [administrative] agency." (Internal quotation marks omitted.) DeBeradinisv. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994).
"[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, supra, 258 Conn. 221. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 200. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) Francini v. Zoning Boardof Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.)Harris v. Zoning Commission, supra, 259 Conn. 420. "The [decision] must be sustained if even one of the stated reasons is sufficient to support CT Page 3750 it . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
"[C]ases in which we have held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind that decision." Harris v. Zoning Commission, supra, 420-21. Where the board does not formally state the reasons for its decision, "the trial court must search the record for a basis for the board's decision."Bloom v. Zoning Board of Appeals, supra, 233 Conn. 208. When "the motion to grant the application [fails] of passage upon [a] tie vote . . . the board, as a body, [can] give no reason . . ." Hall v. Planning and ZoningBoard of Milford, 153 Conn. 574, 576, 219 A.2d 445 (1966); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 21.7, p. 459.
A letter of notification of decision addressed to the Wiznias from the commission informed the Wiznias that "A tie vote on a motion must be considered a denial. Therefore based on the tie vote taken by the Commission on the motion to approve your subdivision application for Walnut Grove Estates subject to modifications, your subdivision application for Walnut Grove Estates has been denied." (ROR, Item DD.) The Court finds the commission did not issue a "formal collective statement of reason for its actions" and the court must search the record to determine if a basis exists to deny the application. Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 208.
 DISCUSSION
As set forth above, the commission denied the Wiznias' application to create a twenty-five lot subdivision "based on the tie vote taken by the Commission . . ." (ROR, Item DD.) The Wiznias appeal on the basis that the commission acted illegally, arbitrarily, and in abuse of its discretion when it denied their application because the application, as modified by the Wiznias, conformed with the applicable subdivision and zoning regulations (Appeal, ¶ 7(a)); and the commission's denial of the Wiznias' subdivision application based on the inland wetlands agency denial of the Wiznias' permit application was improper.[1] (Appeal, ¶ 7(b).)
Walnut Grove Estates is a proposed twenty-five lot subdivision of an approximately seventy-three acre parcel (ROR, Item U3C); which contains two proposed rear lots (ROR, Item M2E.); and is located off of Northrop, CT Page 3751 Ansonia and Racebrook roads in the town of Woodbridge. (ROR, Item A.) The property lies within a zone A district (ROR, Item J1F, p. 2); which permits single-family residential buildings. (ROR, Item GG, p. 15.)
 I
The Wiznias first argue that the commission acted arbitrarily, illegally and in abuse of its discretion in denying their application for a subdivision because their modified application complied with all of the applicable subdivision and zoning regulations. (Wiznias' Brief, p. 8.) The Wiznias contend that at the October 1, 2001 and November 5, 2001 hearings, their engineers, Alan Shepard and Leonard Jackson; and traffic expert, James Bubaris, provided extensive uncontroverted testimony in support of their application, which established that the revised subdivision plans comply with the town zoning and subdivision regulations.[2] (Wiznias' Brief, pp. 8-9, 17.) At trial, the Wiznias further argued that once the special permit applications for the two proposed rear lots were denied, the proposed rear lots were no longer part of the subdivision, the remaining twenty-three lots complied with the regulations, and the commission was, therefore, required to approve the twenty-three remaining lots.
In opposition, the commission argues that it could not approve the Wiznias' application as submitted with proposed rear lots, because the special permit applications for those rear lots were properly denied and approval of the subdivision with the lots "would have been wholly illogical and improper" under § 3.43(b) of the zoning regulations and Chapter 1(c) of the subdivision regulations.[3] (Commission's Brief, p. 15.) At trial the commission argued further that the rear lots were not severed from the subdivision application once they were not approved. Rather, the commission argues that it considered the subdivision as it was filed and presented. Id. It contends, therefore, that because the special permits for the rear lots were not issued, it was required to deny the subdivision due to lack of conformity with the regulations by the presence of unapproved rear lots. Id.
General Statutes § 8-26 provides that "[t]he commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith . . ."[4] General Statutes § 8-26 further provides that "nothing in this section shall be deemed to authorize the commission to approve any . . . subdivision or resubdivision which conflicts with applicable zoning regulations." "The planning commission, acting in its administrative capacity . . . has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted CT Page 3752 for its guidance . . . If it does not conform as required, the plan may be disapproved." (Citation omitted; internal quotation marks omitted.) Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1987). "[O]nly zoning violations that are inherent in the plan as submitted may be a basis for denying the subdivision application." Garrison v. Planning Board,66 Conn. App. 317, 322, 784 A.2d 951, cert. denied, 258 Conn. 944,786 A.2d 429 (2001). The court's function is "to decide whether the commission correctly determined that this subdivision application
contains an existing violation of the town zoning regulations . . . A commission may legally base subdivision application denials on zoning violations inherent in the plan itself as submitted . . ., (Emphasis in original; internal quotation marks omitted.) Id., 321-22.
Woodbridge zoning regulations Table 3.13 requires all lots within a zone A district to have a minimum road frontage of two hundred feet. (ROR, Item GG, p. 23.) Additionally, § 3.43 provides: "The Commission may authorize the issuance of a special permit, with or without conditions, to allow on a rear lot any use otherwise permitted in the Zone if it finds that such lot provides for the best development of the land and that the public health and welfare are not adversely affected. The approval of a rear lot shall be considered only in the following instances: . . . In the case of a parcel to be divided into two or more lots . . . if the Commission determines that the use of a rear lot is made necessary by unusual features peculiar to the land in question, such as difficult drainage, difficult configuration, temporary flooding, steep topography, public utility lines or easements." A rear lot is defined by Woodbridge zoning regulations § 1.41 as "A lot accessible only over a private right-of-way or driveway at least 20' but not more than 50' in width."
A review of the record reveals the following. On May 3, 2001, the Wiznias submitted to the commission a subdivision application (ROR, Item A); accompanied by a subdivision map that depicted two of the twenty-five proposed lots, lot sixteen and lot twenty, as rear lots. (ROR, Item J1F.) Modifications were subsequently made by the Wiznias, and a final subdivision map was submitted on September 25, 2001, which also depicted rear lots sixteen and twenty. (ROR, Item M2E.) At an October 1, 2001 public hearing on the subdivision application, opposition was voiced, asserting that a special permit was required to create the proposed rear lots pursuant to the Woodbridge zoning regulations. (ROR, Item K, p. 77.) The Wiznias thereafter filed separate special permit applications with the commission to create rear lots sixteen and twenty, and requested a hearing on them at the same time the subdivision application was to be heard. (ROR, Item P; Item Q.) The commission deliberated on the special CT Page 3753 permit applications on the same day as, but prior to, the subdivision application and were denied on the ground that the rear lots were not shown to be necessary by any unusual features peculiar to the land in question as required by § 3.43. (ROR, Item EE; Item FF.)
The minutes from the December 17, 2001 work session reveal that the commission deliberated on the subdivision application as it was filed and presented, and determined that without the rear lot approval the plan did not comply with the town's regulations. (ROR, Item AA, p. 3.) The minutes further disclose that the commission moved to approve the subdivision with modifications that eliminated the rear lots, but the 3-3 tie vote resulted in a denial. Id.
In two concurrent appeals, this court held that substantial record evidence supports the commission's decisions denying the special permit applications to create rear lots sixteen and twenty. See Wiznia v.Woodbridge Planning Zoning Commission, Superior Court, judicial district of New Haven, Docket No. CV 02 0460159 (March 25, 2003, Brunetti, J.); Wiznia v. Woodbridge Planning Zoning Commission,
Superior Court, judicial district of New Haven, Docket No. CV 02 0460161 (March 25, 2003, Brunetti, J.).
The Court finds a zoning commission's tie vote to approve an application constitutes a denial of that application. "[T]he failure of an application to garner enough votes for its approval amounts to a rejection of the application." Merlo v. Planning Zoning Commission,196 Conn. 676, 683, 495 A.2d 268 (1985).
The record shows that lots sixteen and twenty are not approved rear lots (ROR Item AA, p. 2); the special permits were applied for, and determined separately from the subdivision application (ROR, Item P; Item Q); and, as depicted on the subdivision map, the proposed rear lots do not have two hundred feet of road frontage as required by Woodbridge zoning regulations § 3.13. (ROR, Item M2E.) Thus, "violations areapparent on the face of the submitted subdivision plan." (Emphasis in original; internal quotation marks omitted.) Garrison v. Planning Board,supra, 66 Conn. App. 322. Zoning violations exist that are inherent in the subdivision plan as presented to the commission in an application separate and distinct from the special permit applications for rear lots. See id., 321. Moreover, pursuant to General Statutes § 8-26 and Woodbridge subdivision regulations § 2(f), the commission was permitted to modify and approve the application. See footnote 4. Accordingly, the commission did not act illegally, arbitrarily or in abuse of its discretion when it voted on a motion to approve the subdivision with modifications. CT Page 3754
 II
The Wiznias next argue that the commission, during its deliberation on the subdivision application, acted improperly when it considered the inland wetlands agency denial of a wetlands permit for the subdivision by considering "criteria other than whether the Application complied with applicable regulations." (Wiznias' Brief, p. 18.) In support, they cite toBeach v. Planning Zoning Commission, 141 Conn. 79, 84-85,103 A.2d 814 (1954). The Wiznias contend further that because "the Application conformed to both the Subdivision Regulations and the Zoning Regulations, the Commission had no discretion but to approve the motion to modify the Application." (Wiznias' Brief, p. 19.)
The commission argues in opposition that pursuant to General Statutes § 8-26 and Woodbridge subdivision regulations § 2(b), "[t]he consideration and weight given to the decision of Inland Wetlands by the Commission in rendering its own decision on the subdivision application was not improper . . ." (Commission's Brief, p. 12.)
As stated in part I above, there is substantial record evidence to support a denial of the subdivision application based on the application's failure to comply with the Woodbridge zoning regulations. The Wiznias' second argument will nonetheless be discussed.
In Beach v. Planning Zoning Commission, supra, 141 Conn. 79, upon which the Wiznias rely, our Supreme Court found no error in the trial court's decision that sustained the plaintiff's appeal of a zoning commission's denial of a subdivision application that was based on the ground that the town did not have the financial resources to support the infrastructure the plaintiff's development would require. Determining that "in passing upon [subdivision] plans the commission is to be controlled by regulations which it has adopted," the court held that because there was no town regulation prohibiting a subdivision for the commission's reasons, the denial was illegal. Id., 84. In the present appeal, the commission was required by statute and the Woodbridge subdivision regulations to consider the inland wetlands agency report.
General Statutes § 8-26 provides in pertinent part: "The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency." Woodbridge subdivision regulations § 2(b) provides: "If an application involves land regulated as an inland wetland or water course under the provisions of Chapter 40 of the General CT Page 3755 Statutes of the State of Connecticut and the Inland Wetlands Agency has not already reviewed the application, the applicant shall file a copy of the application with such agency within ten (10) days after filing such application with the Commission and the Commission shall give due consideration to any report filed with it by such agency prior to rendering a decision on such application."
"The final decision contained in the wetlands report is merely one of the many factors the zoning commission must consider in rendering its own decision . . . The zoning commission must give the wetlands commission report due consideration. We do not read this as a statutory mandate that the zoning commission's decision be based on the wetlands report. To afford due consideration is to give such weight or significance to a particular factor as under the circumstances it seems to merit, and this involves discretion." (Internal quotation marks omitted.) Thoma v.Planning Zoning Commission, 31 Conn. App. 643, 650, 626 A.2d 809
(1993), aff'd., 229 Conn. 325, 640 A.2d 1006 (1994).
The transcript of the hearing on the Wiznias' subdivision application reveals that the commission considered several issues at the public hearing regarding wetlands in the subdivision prior to its receipt of the inland wetlands agency report. At an October 1, 2001 public hearing, commissioner Smith pointed out that thirteen to fourteen of the eighteen acres of proposed open space consists of wetlands. (ROR, Item K, p. 23.) The remaining four to five acres is regulated upland area that lies within the wetland buffer zone. (ROR, Item K, p. 25.) Commissioner Palmieri expressed concern with the close proximity of lot seventeen to a wetland area. (ROR, Item K, p. 29.) Commission chairman Celotto questioned the size and dimensions of wetlands as compared to lots sixteen and seventeen and raised the issue of the abutting landowners' concerns, as set forth in a letter from Attorney Dufour (ROR, Item K, p. 30); regarding wetland areas in the proposed subdivision as related to the adjacent landowners' lot. (ROR, Item M2B.) The Wiznias' engineer, Shepard, acknowledged that runoff occurs from the subdivision into neighboring properties. (ROR, Item K, p. 31.) Moreover, commissioners Luciani, Fineberg, King, and Smith raised concerns regarding the lack of clarity in the subdivision on the issue of storm drain and detention pond maintenance. (ROR, Item K, p. 39-43.)
The commission received the inland wetlands agency report on December 7, 2001. (ROR, Item Y.) The inland wetlands report states that denial was based, in part, on the close proximity of storm water detention basins to wetlands, and the fact that "surface runoff from the proposed development, containing salts and other pollutants, will be piped to the detention basins, which will then discharge into wetlands and the review CT Page 3756 area adjacent thereto." (ROR, Item Y, p. 2.) The inland wetlands agency further found that a feasible alternative location for the basins exists, which would render maintenance of the basins more feasible. (ROR, Item Y, p. 3.)
The placement and discharge of storm water basins were some of the concerns specifically raised by commission members at the public hearing in October, prior to receiving the inland wetlands agency report. The commission acted on the subdivision application at a December 17, 2001 work session meeting. (ROR, Item AA.) The minutes of that meeting disclose that out of the 3-3 tie vote to approve the subdivision with modifications, commission members Palmieri, King and Smith opposed the approval with modifications "due to [the] Inlands Wetland Agency denial . . ." (ROR, Item AA, p. 4.)
The record reflects that the commissioners raised inland wetland concerns prior to receiving the inland wetlands agency report that denied an inland wetlands permit for the Wiznias' subdivision. The Court finds, that when the three commission members gave their reason for opposing the motion to approve the Wiznias' subdivision application with modifications "due to [the] Inlands Wetland Agency denial of [the Wiznias'] application," they merely gave due consideration to the inland wetland agency's decision as required by General Statutes § 8-26 and Woodbridge subdivision regulation § 2(f)[5] and did not act illegally, arbitrarily or in abuse of its discretion.
For the foregoing reasons, the Wiznias' appeal is dismissed.
Brunetti, J.